COMMONWEALTH vs. TWO JUVENILES.

Suffolk. December 3, 1985. — April 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Criminal,* Discovery, In camera inspection. *Evidence,* Privileged
communication. *Constitutional Law,* Confrontation of witnesses; Judi-
cial review. *Rape.*

On its face, G. L. c. 233, § 20J, as enacted by St. 1984, c. 207, precluded
the judge at the trial of a sexual assault case from conducting an in
camera inspection of communications between a sexual assault counselor
and the alleged victim of the assault. [263-264]
On report by the judge in a rape case questioning the constitutionality of
G. L. c. 233, § 20J, which prohibits disclosure by a "sexual assault
counsellor" of "confidential communications" received from a "victim"
of sexual assault, this court declined to determine the constitutionality
of the section in the absence of particular circumstances established by
the record of a trial. [264-265]
Discussion of the potential conflict between the absolute privilege estab-
lished by G. L. c. 233, § 20J, prohibiting disclosure by a "sexual assault
counsellor" of "confidential communications" received from a "victim"
of a sexual assault and a criminal defendant's constitutional rights to
such information. [265-269]

COMPLAINT received and sworn to in the Dorchester Division
of the District Court Department on December 24, 1984.

On appeal to the appeals session of the Boston Division of
the Juvenile Court Department, questions of law were reported
to the Appeals Court by *Paul D. Lewis,* J. The Supreme Judicial
Court transferred the case on its own initiative.

*Andrew Silverman,* Committee for Public Counsel Services
(*Paul L. McGill,* Committee for Public Counsel Services, with
him) for one juvenile.

*David B. Mark,* Assistant District Attorney, for the Com-
monwealth.

The following submitted briefs for amici curiae:

*Althea Lloyd* for Department of Public Health & others.

*Jonathan Brant* for Beth Israel Hospital.

*Judith Farris Bowman* for Massachusetts Association of Criminal Defense Lawyers.

*Marjorie Heins & Amy Sisson* for Civil Liberties Union of Massachusetts.

WILKINS, J. We are asked to consider whether the absolute prohibition of G. L. c. 233, § 20J (1984 ed.), against disclosure by a "sexual assault counsellor" of "confidential communications" received from a "victim" of sexual assault is constitutional in the face of the confrontation clauses of the Sixth Amendment to the Constitution of the United States and art. 12 of the Massachusetts Declaration of Rights.[1]

The case comes to us on our transfer here of a report of two questions by a judge sitting in the appeals session of the Boston

---

[1] General Laws. 233, § 20J, reads as follows:

"As used in this section the following words, unless the context clearly requires otherwise, shall have the following meaning:

" 'Rape crisis center', any office, institution or center offering assistance to victims of sexual assault and the families of such victims through crisis intervention, medical and legal counseling.

" 'Sexual assault counsellor', a person who is employed in a rape crisis center, has undergone thirty-five hours of training, who reports to and is under the direct control and supervision of a licensed social worker, nurse, psychiatrist, psychologist or psychotherapist and whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

" 'Victim', a person who has suffered a sexual assault and who consults a sexual assault counsellor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by such sexual assault.

" 'Confidential communication', information transmitted in confidence by and between a victim of sexual assault and a sexual assault counsellor by a means which does not disclose the information to a person other than a person present for the benefit of the victim, or to those to whom disclosure of such information is reasonably necessary to the counseling and assisting of such victim. The term includes all information received by the sexual assault counsellor which arises out of and in the course of such counseling and assisting, including, but not limited to reports, records, working papers or memoranda.

"A sexual assault counsellor shall not disclose such confidential communication, without the prior written consent of the victim; provided, however, that nothing in this chapter shall be construed to limit the defendant's right

Juvenile Court. See Mass. R. Crim. P. 34, 378 Mass. 905 (1979). The questions are: "(1) Does G. L. c. 233, § 20J, added by St. 1984, c. 207, prevent this court from permitting an *in camera* inspection of communications between a sexual assault counselor and an alleged victim of a sexual assault; and (2) if so, is G. L. c. 233, § 20J constitutional in light of the Confrontation Clause of the Sixth Amendment of the Constitution of the United States or the cognate provisions of the Massachusetts Declaration of Rights?"

We summarize the facts found by the judge. Late in 1984, two juveniles were charged with the aggravated rape of an eighteen year old woman, who sought medical assistance and counseling after the incident through the emergency unit of the Beth Israel Hospital in Boston. She was seen first by a sexual assault counselor assigned to the hospital's rape crisis center.[2] The victim also received medical care in the hospital's emergency unit.

On May 9, 1985, counsel for the juveniles moved for an in camera inspection of communications protected from disclosure by § 20J. A written motion for inspection of "c. 233 § 20J Hospital Records" sought the rape crisis center's records "for an *in camera* inspection by the Judge of this Court in order to determine whether or not those materials contain exculpatory evidence."[3]

---

of cross-examination of such counsellor in a civil or criminal proceeding if such counsellor testifies with such written consent.

"Such confidential communications shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim to whom the report, record, working paper or memorandum relates."

[2] The judge found that "[t]he woman meets the definition of 'victim' in G. L. c. 233, § 20J; the 'sexual assault counselor' and 'rape crisis center' meet these respective definitions in G. L. c. 233, § 20J, and the oral communications between the victim and the sexual assault counselor and any written reports made of such conversations meet the definition of 'confidential communications' in G. L. c. 233, § 20J."

[3] Originally the juveniles requested an inspection by the judge alone. Here they argue that counsel must participate with the judge in the initial in camera review. One amicus in favor of the motion takes no position as to

We do not hesitate to answer the first question in the affirmative. On it face, § 20J prevents the trial court from conducting an in camera inspection of communications between a sexual assault counselor and an alleged victim of sexual assault. The language of § 20J explicitly prohibits the disclosure of any confidential communication made to a sexual assault counselor unless the victim grants "prior written consent." Section 20J reinforces this general prohibition by adding that, without the victim's prior written consent, a confidential communication "shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding."

We are aware that the judge's basic concern was whether the constitutional rights of the juveniles would be violated by the total ban against access to communications made confidential by § 20J. The first question suggests that the juveniles' constitutional rights might be satisfactorily guaranteed by less than total, public disclosure of all such confidential communications. Use of the device of an in camera inspection would derive not from an interpretation of § 20J but rather from a determination that the juveniles have a constitutional right which transcends the statute and requires the courts to fashion an exception to the statute (or perhaps, alternatively, to strike it down). The second question, of course, presents directly the issue of the constitutionality of § 20J in a criminal case or in a delinquency proceeding of this general type.

The problem with the second question is that it would require a determination of the constitutionality of § 20J in the abstract. It is a traditional and salutary practice of this court to decline to answer a constitutional question until the circumstances of a case are established and require an answer to the constitutional question. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 784 (1984); *Bunker Hill Distrib., Inc.* v. *District Attorney for the*

---

whether counsel should be present, citing *Commonwealth* v. *Collett,* 387 Mass. 424, 436-439 (1982) (judge alone should review information to determine legal question), and *Commonwealth* v. *Stewart,* 365 Mass. 99, 105-106 (1974) (defense counsel has a role in assessing the significance of evidence). The other amicus in favor of the motion argues that the strength of the policy expressed in § 20J justifies an initial inspection by the judge alone.

*Suffolk Dist.,* 376 Mass. 142, 145 (1978); *Cole* v. *Chief of Police of Fall River,* 312 Mass. 523, 526 (1942), appeal dismissed sub nom. *Cole* v. *Violette,* 319 U.S. 581 (1943). In *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 245-246 (1946), we explained the reason for our general practice: "In many cases it would be difficult or even impossible to say abstractly and unconditionally that a statute is or is not constitutional. In part its provisions may be unconstitutional, yet the remainder may be constitutional . . . . A statute may be unconstitutional as applied to some states of fact, but constitutional as applied to others. . . . Only when the impact of a statute upon particular individuals, who have both the opportunity and the incentive to defend their rights by argument, and upon a set of definite facts established after genuine controversy, has been shown, can a court decide a constitutional question with confidence that relevant considerations have not been overlooked." (Citations omitted.)[4]

For these reasons, we cannot and should not give a definite answer to the second question. We do, however, outline certain principles that should aid trial judges who face a claim of the unconstitutionality of § 20J in concrete circumstances. We start with the obvious. We are not concerned here with weighing the merits of an asserted common law privilege against competing considerations to determine the privilege's existence or scope. See *Three Juveniles* v. *Commonwealth,* 390 Mass. 357, 360 (1983); *Matter of Roche,* 381 Mass. 624, 640 (1980). To the extent it is able, the Legislature has already determined that question. Section 20J, like few other testimonial privilege statutes (see, e.g., G. L. c. 233, § 20A [1984 ed.] [priest-penitent]), is a statement of absolute privilege. Statutory privileges normally have exceptions, some of which are quite general,

---

[4] In rare instances, and not always without objection, where a successful facial challenge to the constitutionality of a statute would result in the total invalidation of the statute and in a saving of time and expense in numerous cases, this court has decided a constitutional question before it was necessary to do so. See, e.g., *Commonwealth* v. *Colon-Cruz,* 393 Mass. 150, 154-157 (1984); *id.* at 180 (Wilkins, J., dissenting); *id.* at 181 (Nolan, J., dissenting joined by Lynch, J.).

and, for that reason, they indicate a less firmly based legislative concern than § 20J does for the inviolability of the communication being protected. See, e.g., G. L. c. 112, § 135 (1984 ed. & Supp. Jan., 1986) (social worker); G. L. c. 233, § 20B (1984 ed. & Supp. Jan., 1986) (psychotherapist-patient). Section 20J protects a victim's expectation of privacy and guarantees the preservation of confidentiality without exception.

With the existence and strength of the privilege established by the Legislature, the only issue left for judges is whether, because of a constitutional right, a criminal defendant is entitled to judicial inspection of the privileged communications in camera and thereafter to the release of the communications for use in his defense. The juveniles and two of the amici curiae argue that at least some statements of a victim to a counselor must relate to the alleged crime, that those statements will be relevant and material, and that, therefore, in every case, the possibility that protected communications might aid an accused is enough to require an in camera inspection.

We think it clear that in certain circumstances the absolute privilege expressed in § 20J, a nonconstitutionally based testimonial privilege, must yield at trial to the constitutional right of a criminal defendant to have access to privileged communications.[5] The Supreme Court of the United States has recognized that a criminal defendant's constitutional right to present evidence shown to be relevant and likely to be significant may override a rule of exclusion enforced in the State in which the trial is held. *Davis* v. *Alaska,* 415 U.S. 308, 319 (1974) (existence of juvenile record, made confidential by statute, admissible to show witness's bias). *Chambers* v. *Mississippi,* 410 U.S. 284, 302 (1973) (restrictive State rules of evidence must give way to defendant's right to fair trial). *Washington* v.

---

[5] The second reported question speaks only in terms of the confrontation clauses of the Federal and State Constitutions. The constitutional right to compulsory process is also apt to be involved in cases of this general character, such as when a defendant seeks the testimony of a person who received a confidential communication. See generally Westen, Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases, 91 Harv. L. Rev. 567 (1978).

*Texas,* 388 U.S. 14, 23 (1967) (statute disqualifying certain persons as defense witnesses outweighed by right of accused to relevant and material testimony). Cf. *United States* v. *Nixon,* 418 U.S. 683, 711-713 (1974) (constitutionally based executive privilege as to certain communications subordinated to interests of criminal justice system). None of these cases involved a testimonial privilege.[6] In *Davis* v. *Alaska, supra,* where a statute made certain information confidential, the defendant wanted to show a witness's bias and not merely the witness's lack of credibility. In assessing the scope of the holding, we have considered it essential that the case involved a defendant who demonstrated how the excluded evidence tended to show the witness's bias or specific motive to lie. See *Commonwealth* v. *Hesketh,* 386 Mass. 153, 161 n.10 (1982); *Commonwealth* v. *Joyce,* 382 Mass. 222, 231 (1981); *Commonwealth* v. *Haywood,* 377 Mass. 755, 760-761 (1979); *Commonwealth* v. *Santos,* 376 Mass. 920, 925 (1978). Other courts have agreed with us. See Note, *Defendant* v. *Witness:* Measuring Confrontation and Compulsory Process Rights Against Statutory Communications Privileges, 30 Stan. L. Rev. 935, 955 (1978).

Courts elsewhere dealing with assertions of a constitutional right to an in camera inspection of statutorily privileged communications have required the person seeking the information to make some preliminary showing of why the privilege must be overridden. This burden has been expressed in many ways. See, e.g., *Hammarley* v. *Superior Court,* 89 Cal. App. 3d 388, 399 (1979) (to gain in camera disclosure of news reporter's information privileged by statute, defendant must show reasonable possibility information might result in exoneration and is unavailable from another source); *State* v. *Siel,* 122 N.H. 254, 259 (1982) (to overcome a constitutionally based reporter's privilege, defendant must show that information is unavailable from other sources and that there is reasonable possibility that

---

[6] The court noted in *Washington* v. *Texas, supra* at 23 n.21, that the opinion should not be construed as disapproving testimonial privileges "which are based on entirely different considerations from those underlying the common-law disqualifications for interest."

information would affect the result); *Matter of Farber,* 78 N.J. 259, 276-277, cert. denied sub nom. *New York Times Co.* v. *New Jersey,* 439 U.S. 997 (1978) (defendant must make preliminary showing of "legitimate need" before he may have in camera inspection of material protected by press-shield statute); *State ex rel. Green Bay Newspaper Co.* v. *Circuit Court,* 133 Wis. 2d 411, 421 (1983) (defendant who shows that constitutionally protected news reporter's privilege concerns information that is probably admissible and favorable to defense, entitled to in camera inspection). See also McCormick, Evidence § 74.2, at 179 (3d ed. 1984). In general, an assertion that inspection of information is needed only for a possible attack on credibility has been rejected because, if upheld, such a broad right of discovery would substantially destroy the privilege. See *State* v. *Siel, supra* at 260 (information sought solely to show prior inconsistent statement is not "material"); *People* v. *Gissendanner,* 48 N.Y.2d 543, 549-550 (1979) (access to personnel records denied); *State* v. *Rinaldo,* 102 Wash. 2d 749, 753 (1984) (same as in *State* v. *Siel, supra*). *Contra Brown* v. *Commonwealth,* 214 Va. 755, 758 (1974) (need for material, inconsistent statements overrides news reporter's privilege deprived from First Amendment).

Few courts have considered constitutional challenges to testimonial privileges for communications to a rape crisis counselor. The Justices of the Supreme Court of Rhode Island have indicated that a bill substantially similar to § 20J would be unconstitutional if enacted. *Advisory Opinion to the House of Representatives,* 469 A.2d 1161, 1166 (R.I. 1983). The Justices further indicated that another proposed act would not violate State or Federal constitutional confrontation and compulsory process principles because it would require, before an in camera inspection by the judge, that a criminal defendant "show that there is reason to believe that the witness knows and/or [*sic*] the material sought contains information which is relevant to a material issue in the case." *Id.* at 1163. In *Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 19 (1981), the court declined to adopt a blanket common law rule denying a criminal defendant access to information given by a victim to

a rape crisis center and authorized defense inspection of those statements of the complainant bearing on the facts of the alleged offense. Subsequently, the Pennsylvania Legislature adopted an absolute privilege against disclosure. 42 Pa. Const. Stat. Ann. § 5945.1 (Purdon 1982). In *People* v. *Pena,* 127 Misc. 2d 1057, 1060 (N.Y. Sup. Ct. 1985), the judge denied access to statements made and records kept in a rape crisis center because the defendant made no specific showing that the records contained information bearing on "guilt or innocence, unreliability of witnesses or exculpatory material."

Any conflict between the testimonial privilege and a defendant's constitutional rights to confront witnesses against him and to summon witnesses must be resolved on the facts of each case. Before any in camera inspection of the privileged material can be justified, the defendant must show a legitimate need for access to the communications. It is not sufficient that, as is apt to be the case where § 20J applies, the very circumstances of the communications indicate that they are likely to be relevant and material to the case. Likewise, the unavailability of the information from another source will not be sufficient to establish a legitimate need. Any unfairness to the defendant in denying him access to the privileged information may not be apparent until the victim has testified. If a defendant can demonstrate that the protected information is likely to be useful to his defense, the judge should review the communications in camera.[7]

We answer the first question in the affirmative. We are unable to answer the second question because it presents a question of constitutional law that cannot be answered in the abstract.

---

[7] In the consideration of the communications in camera, the judge will need to look for evidence of the witness's bias or motive to lie and additionally for factual statements relating to various questions, such as misidentification or inability to identify or describe assailant.