## COMMONWEALTH *vs.* JASON R. MAXWELL.

Essex. April 9, 2004. - May 25, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Deoxyribonucleic Acid. Evidence,* Medical record, Buccal swab, Relevancy and materiality, Privileged record. *Probable Cause. Search and Seizure,* Buccal swab. *Due Process of Law,* Access to evidence, Fair trial. *Privileged Communication.*

This court concluded that where there had been a finding of probable cause sufficient for the initiation of formal criminal proceedings, either through the return of an indictment or the issuance of a complaint, the Commonwealth could obtain a buccal swab — the rubbing of a swab on the interior surface of a person's cheek in order to obtain material that could be subjected to deoxyribonucleic acid testing — of a criminal defendant by demonstrating that the sample sought would probably provide evidence relevant to the question of the defendant's guilt, through the submission of affidavits and documentary evidence as might be necessary in the circumstances or required by the judge; moreover, while an adversary hearing had to be held, and the person from whom the sample was sought had to be given notice and an opportunity to be heard, the holding of an evidentiary hearing, beyond the submissions of the parties, was not required. [777-779]

This court concluded that where a criminal defendant charged with sexually assaulting a patient at a hospital had subpoenaed the patient's medical records, which records were subject to the protections of G. L. c. 111, § 70F, the judge on remand, when hearing a motion to quash the subpoena, should employ the same procedures and standards as those used for the requested discovery of rape counselling records privileged under G. L. c. 233, § 20J, in considering what, if any, of the patient's medical records must be disclosed. [779-781]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on October 31, 2001.

A motion to quash was heard by *Stephen S. Ostrach*, J., and the matter was reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark C. Rogers* for Caritas Holy Family Hospital.

*Henry Lebensbaum* (*Stephen C. Hoctor* with him) for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

*Jane Larmon White,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

CORDY, J. A judge in the District Court reported two questions to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case to this court on our own motion. The first question concerns the nature and scope of the showing required of the Commonwealth before a defendant may be ordered to submit to a buccal swab for deoxyribonucleic acid (DNA) analysis.[1] The second question concerns whether and how a defendant in a criminal case may properly access medical records relevant to his defense, but protected by the statutory prohibition against releasing human immunodeficiency virus (HIV) test results in the absence of a patient's consent. See G. L. c. 111, § 70F.

For the reasons set forth below, we conclude that, similar to a postindictment request for a blood sample, after a criminal complaint has issued, the Commonwealth may obtain a buccal swab by demonstrating at an adversary (but not necessarily evidentiary) hearing, that the buccal swab will probably provide evidence relevant to the question of the defendant's guilt. See *Commonwealth* v. *Trigones,* 397 Mass. 633, 640 (1986). We also conclude that records subject to the protections of G. L. c. 111, § 70F, may be discovered, using the same procedures and standards as those employed for the requested discovery of rape counselling records privileged under G. L. c. 233, § 20J. See *Commonwealth* v. *Fuller,* 423 Mass. 216 (1996).

1. *Background.* Jason Maxwell was charged with sexually assaulting a patient at a hospital where he worked as a laboratory technician. The patient was being treated for a brain infection at the time of the alleged assault. According to a police report submitted to the court, the patient alleged that he was indecently

---

[1] A buccal swab "involves the rubbing of a swab on the interior surface of the cheek." *Doe* v. *Senechal,* 431 Mass. 78, 79 n.4, cert. denied, 531 U.S. 825 (2000).

touched by a hospital employee who was drawing his blood. The patient then observed the employee masturbate and ejaculate into a rubber glove. The glove was recovered, and testing subsequently confirmed that it contained sperm cells. Based on its records, the hospital identified the employee as Maxwell.

a. *The buccal swab.* After complaints issued charging Maxwell with indecent assault and battery and indecent exposure,[2] the Commonwealth filed a motion seeking an order compelling him to participate in the production of a DNA sample by permitting a buccal swab to be taken. The motion was supported by the police report of the incident and affidavits from two State chemists. Based on the report and the affidavits, the Commonwealth contended that comparison of the DNA profile of the sperm cells found in the glove with the DNA profile of the biological evidence that would be obtained from the buccal swab, would lead to material evidence regarding Maxwell's guilt as the perpetrator of the indecent assaults. Maxwell argued that in order to obtain the sample the Commonwealth needed to show, at an evidentiary hearing, that there was probable cause to believe he committed the offenses with which he was charged, and that the testing of the sample sought would probably produce evidence relevant to the question of his guilt.[3]

At the hearing on the motion, Maxwell conceded that the testing would probably produce evidence relevant to his guilt, but the judge ruled that the Commonwealth was also required to show probable cause that Maxwell committed the offenses charged as a prerequisite to obtaining the order. The judge concluded, however, that the Commonwealth had adequately made this showing through the submissions supporting its mo-

---

[2]Maxwell was charged with six counts of indecent assault and battery and one count of indecent exposure.

[3]Maxwell also claimed that, even if the Commonwealth established probable cause that he committed the offenses and that the buccal swab would probably produce evidence relevant to his guilt, the judge also had to weigh the seriousness of the crime, the importance of the evidence, and the availability of less intrusive means of obtaining the evidence against his right to be free from bodily intrusion. See *Matter of Lavigne,* 418 Mass. 831, 836 (1994). See note 13, *infra.*

tion, and that an evidentiary hearing was not necessary.[4] He then decided to report the question under rule 34.

b. *Medical records.* Prior to trial and pursuant to Mass. R. Crim. P. 17, 378 Mass. 885 (1979), Maxwell requested that a subpoena issue for the patient's medical records, in order to ascertain the nature, extent, and effect of the brain infection for which he was being treated and the medication he was taking at the time of the alleged assault. That request was allowed, and a subpoena was issued and served on the hospital.[5] The hospital moved to quash the subpoena on the basis of G. L. c. 111, § 70F, which prohibits a hospital from releasing the results of an HIV test without the patient's consent.[6] The hospital contended that § 70F creates an absolute bar to the production of the medical records sought (in the absence of patient consent), and, unlike other similar statutes, see, e.g., G. L. c. 111, § 70 (hospital records generally), and G. L. c. 123, § 36 (certain mental health records), contains no provision for the release of records pursuant to court order.

After finding that it was "undisputed" that the medical records contained information covered by § 70F, and that there was no practical way of redacting the records to avoid its strictures, the judge noted Maxwell's argument that he would be deprived of important evidence in his defense if he were unable to access records bearing directly on the ability of the only percipient witness accurately to perceive and recall the events on which the criminal charges were based. The judge opined that the *Bishop-Fuller* protocol[7] seemed to be the most analogous and appropriate procedure through which to balance

[4]The judge also suggested that the District Court might not even have the authority to hold an evidentiary hearing on the issue of probable cause in light of *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't,* 439 Mass. 352 (2003). While we disagree with the judge's application of that case to these circumstances, we conclude that an evidentiary hearing is unnecessary in any event.

[5]The subpoena also sought other (nonmedical) hospital records regarding the incident. These were produced.

[6]General Laws c. 111, § 70F, provides in relevant part that no "facility" shall "disclose the results of [an HIV] test to any person other than the subject thereof without first obtaining the subject's written, informed consent."

[7]See *Commonwealth* v *Bishop,* 416 Mass. 169 (1993), and *Commonwealth* v. *Fuller,* 423 Mass. 216 (1996).

the conflicting statutory and constitutional interests at stake, but in the absence of precedent regarding the protections afforded medical records subject to § 70F, he determined to report the question of its applicability.[8]

2. *Discussion.* a. *Buccal swab.* Although implicating the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures, a buccal swab is no more intrusive than the taking of a blood sample.[9] We have considered requests by the Commonwealth to compel the latter at various stages of a criminal proceeding. At the precharge stage, we have concluded that a search warrant for a blood sample can be issued only on a showing of probable cause that the subject of the warrant committed a crime and that the evidence sought would aid in its investigation. *Matter of Lavigne*, 418 Mass. 831, 835-836 (1994). In the context of a grand jury investigation, such evidence may be compelled only if the grand jury have "a reasonable basis for believing (have probable cause for believing, if you wish) that a blood sample will provide test results that will significantly aid . . . in their investigation of circumstances in which there is good reason to believe a crime has been committed." *Matter of a Grand Jury Investigation*, 427 Mass. 221, 226, cert. denied sub nom. *A.R.* v. *Massachusetts*, 525 U.S. 873 (1998). See *Commonwealth* v. *Williams*, 439 Mass. 678, 682-683 (2003). Finally, a request for

[8]The judge went on to find that Maxwell had "a good faith, specific and reasonable basis for believing" that the records sought would contain potentially exculpatory evidence relevant and material to the defense, and that if the *Bishop-Fuller* protocol did apply, he would deny the motion to quash and order the hospital to produce the records for in camera review. In light of our conclusion that the protocol applies, the judge, on remand, can proceed directly to this stage of the protocol.

[9]Unlike a blood sample extracted by needle, a buccal swab does not involve an "intrusion below the skin," and is arguably more akin to a saliva sample, as it involves obtaining bodily material from inside the mouth. See *Schmerber* v. *California*, 384 U.S. 757, 769-770 (1966) (noting blood sample requires "intrusion[] beyond the body's surface"). See also *Commonwealth* v. *Downey*, 407 Mass. 472, 477 (1990) (declining to consider whether compelled production of saliva and hair samples is deserving of less stringent analysis than compelled blood sample because it does not involve "intrusion below the skin"); *In re Grand Jury Proceedings Involving Vickers*, 38 F. Supp. 2d 159, 165-168 (D.N.H. 1998) (grand jury's request for saliva samples subject to balancing test of Fourth Amendment to the United States Constitution to determine reasonableness of request).

a postindictment order to obtain such a sample must be based on a showing that the "defendant's blood will probably produce evidence relevant to the question of the defendant's guilt." *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986).[10]

In each of these contexts, the person from whom the sample is sought must be given notice and an opportunity to be heard. Although the burden at such a hearing is on the Commonwealth to make the requisite showing, a judge need not hold an evidentiary hearing, nor must the Commonwealth produce testimonial evidence to meet its burden. *Commonwealth* v. *Williams, supra* at 684 (affidavit of member of grand jury or prosecutor, or submission of grand jury testimony adequate); *Commonwealth* v. *Trigones, supra* (indictment, affidavit, and uncontroverted statements of prosecutor made and recorded in open court adequate).[11]

The Commonwealth's motion in the present case should be handled in the manner prescribed in *Commonwealth* v. *Trigones, supra*. As in *Trigones*, the request comes after criminal charges have been brought. There is no analytical difference between an indictment, returned by a grand jury, and a complaint issued by a clerk-magistrate on the sworn statement of a police officer or other complainant. In both circumstances, there has been a finding of probable cause sufficient for the initiation of formal criminal proceedings.[12] Consequently, to obtain a buccal swab at this stage, the Commonwealth's burden

---

[10]The precise language in *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986), is: "A postindictment order to obtain a blood sample for identification purposes should be based on a showing of probable cause made at an adversary hearing. . . . At such a hearing the Commonwealth must show that a sample of the defendant's blood will probably produce evidence relevant to the question of the defendant's guilt." (Citations omitted.)

We do not construe this language to mean that, in the postindictment context, the Commonwealth must make a showing that there is probable cause to believe that the defendant committed the crime, beyond the existence of the indictment itself. The showing required relates to the likelihood that the sample sought will produce evidence relevant to the defendant's guilt.

[11]The important process point is that there be a "hearing on such a motion at which the defendant may be heard (and all facts will be set forth in a form capable of appellate review)." *Commonwealth* v. *Trigones, supra* at 641.

[12]To the extent that the defendant seeks to contest the adequacy of this finding, his only remedy is to bring a motion to dismiss the complaint or indictment. See *Commonwealth* v. *DiBennadetto*, 436 Mass. 310, 313 (2002);

is merely to show that the sample sought will probably provide evidence relevant to the question of the defendant's guilt.[13] See *Commonwealth* v. *Beausoleil*, 397 Mass. 206, 222, 223 (1986) (in paternity prosecution, "probable cause to believe that the [blood] test results will be inculpatory exists when a complaint is issued on probable cause . . . charging a putative father with paternity").

This burden can be met through the submission of affidavits and documentary evidence as may be necessary in the circumstances or required by the judge. While an adversary hearing must be held, the holding of an evidentiary hearing, beyond the submissions of the parties, is not required.

b. *Medical records.* "The Legislature has accorded a privilege to many types of records that are often sought in prosecutions for sexual assault, but the legislative creation of such privileges cannot trump a defendant's constitutional right to a fair trial. See *Commonwealth* v. *Bishop*, [416 Mass. 169,] 177, 182-183 [(1993)]; *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 883 (1991); *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 266-267 (1986)." *Commonwealth* v. *Sheehan*, 435 Mass. 183, 195-196 (2001) (Sosman, J., concurring). It does not "belittle the compelling justification that underlies these privileges" to

*Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984); *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982).

[13]With respect to Maxwell's claim that the judge must, in addition, weigh various factors before ordering that the swab be taken (including the seriousness of the crime, the importance of the evidence, and the unavailability of less intrusive means of obtaining it), we note that this requirement has only been articulated by the court in cases in which samples or tests have been sought in the investigative stages prior to the issuance of any complaint or indictment. See *Commonwealth* v. *Williams*, 439 Mass. 678, 685 (2003) (grand jury investigation); *Matter of a Grand Jury Investigation*, 427 Mass. 221, 224, cert. denied sub nom. *A.R.* v. *Massachusetts*, 525 U.S. 873 (1998) (same); *Matter of Lavigne*, 418 Mass. 831, 836 (1994) (search warrant). While we conclude that they remain relevant factors for the judge to consider in connection with postindictment or postcomplaint requirements, the omission of specific findings thereon is not fatal where the record plainly supports the conclusion that any weighing of these factors would tilt heavily in favor of granting the Commonwealth's motion. Such is the case here. The sexual assault of a hospital patient is a very serious crime, the importance of definitively linking the defendant with the semen left in the patient's room is central to the case, and the intrusive nature of the test sought is minimal. See *Commonwealth* v. *Williams*, *supra* at 686.

acknowledge the paramount importance of the constitutional right of one accused of crime to a fair trial. *Id.* at 196 n.4 (Sosman, J., concurring).

The medical records at issue here are protected by the strictest form of legislatively created privilege. Section 70F provides no exceptions to the prohibition against disclosure imposed on medical facilities with access to HIV testing information, short of the "written informed consent" of the subject. It is not, however, the only legislatively created privilege intended to be as absolute as the law allows.

Beginning at least as far back as *Commonwealth* v. *Two Juveniles, supra,* this court has grappled with the need to balance the high degree of protection intended for certain sensitive and intensely personal records with a "criminal defendant's constitutional right to present evidence shown to be relevant and likely to be significant" to his defense. *Id.* at 266. In each instance, we have concluded that there are circumstances in which even "absolute," nonconstitutionally-based privileges such as expressed in § 70F must yield to those constitutional rights.[14] In *Commonwealth* v. *Two Juveniles, supra,* the rape counselling records privilege found in G. L. c. 233, § 20J, was at issue. The statutory language was as absolute, and even more explicit, than the language present here.[15] Yet, the court concluded that on a showing of legitimate need for access by a defendant, the privilege must give way, at least for an in camera

[14]The hospital argues that a patient's interest in the confidentiality of his HIV testing records, embodied in the statutory privilege, is based on a constitutionally protected privacy interest. This same argument was made to the court in *Commonwealth* v. *Fuller,* 423 Mass. 216, 222-223 (1996), regarding the rape counselling records privilege, G. L. c. 233, § 20J. We noted then that there was some, but not much, support for a constitutionally protected "interest in avoiding [the governmentally compelled] disclosure of personal matters," *Fuller, supra* at 222, quoting *Whalen* v. *Roe,* 429 U.S. 589, 599 (1977), but determined it unnecessary to decide the issue because even if the privilege arose out of some form of a constitutional right to confidentiality, it would still have to be balanced against the well-established due process rights of an accused.

[15]Confidential communications covered by G. L. c. 233, § 20J, "shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim to whom the report, record, working paper or memorandum relates."

inspection of the records by a judge.

This same privilege was at issue in *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996), in which we concluded that the balancing test and protocols adopted in *Commonwealth* v. *Bishop, supra*, regarding access to other privileged records, ought to apply when a defendant seeks access to records protected by § 20J. In so holding, we adopted a heightened standard to describe the threshold showing a defendant must make to obtain access to highly privileged records such as rape counselling records. *Commonwealth* v. *Fuller, supra* at 225-227. "[O]nly when a defendant's motion for production of the records has demonstrated a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt," should a judge undertake even an in camera review of the privileged records. *Id.* at 226.

There is no difference between records protected by the "absolute" statutory privilege of § 20J and those comparably protected by § 70F.[16] The interests to be balanced are similar in nature and importance. The *Bishop-Fuller* protocol and standards are equally relevant and applicable. The judge should use that protocol in considering what, if any, of the medical records of the patient must be disclosed to the defendant in order to ensure his constitutional right to a fair trial.[17]

3. *Conclusion.* The case is remanded to the District Court for

---

[16]The hospital points to a decision of a single justice of this court, Commonwealth *vs.* Luis Ortiz, SJ-2001-0055 (Feb. 15, 2001), for the proposition that the § 70F privilege cannot be abridged under any circumstances. The decision is inapposite to the circumstances presented when a defendant in a criminal case seeks access to the privileged records of an alleged victim containing information necessary to his defense. The single justice concluded that a defendant could not be compelled to disclose to the Commonwealth whether he was HIV positive. The Commonwealth's interest in getting the protected information, while important (the arresting officers had been exposed to defendant's blood during his arrest and were consequently very concerned for their health), was not constitutionally based, and therefore could not tip the balance that the Legislature had weighted heavily in favor of nondisclosure.

[17]The court notes the recent appointment of a committee to study and present to the court alternatives to the current *Bishop-Fuller* protocol. See *Commonwealth* v. *Pelosi, ante* 257, 258-259 n.1 (2004).

further proceedings consistent with the answers to the judge's questions contained herein.

*So ordered.*