### Commonwealth vs. Eugene Bertini.
### Commonwealth vs. Leslie Bertini.

Suffolk. April 1, 2013. - August 6, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, DUFFLY, & LENK, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Disclosure of evidence, Interlocutory appeal. *Constitutional Law,* Search and seizure. *Search and Seizure,* Buccal swab. *Witness,* Compelling giving of evidence. *Evidence,* Buccal swab. *Deoxyribonucleic Acid.*

This court concluded that G. L. c. 211, § 3, is the appropriate means by which a criminal defendant may seek interlocutory relief from a court order compelling the production of a buccal swab for purposes of deoxyribonucleic acid testing. [135-137]

A single justice of this court, treating as petitions brought pursuant to G. L. c. 211, § 3, civil actions commenced by criminal codefendants seeking interlocutory relief from an order of the Superior Court compelling each of them to provide a buccal swab for purposes of deoxyribonucleic acid testing, did not clearly err or abuse his discretion in denying such relief, where the errors complained of were remediable in the normal process of appeal. [137-140]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on February 3, 2012, and February 2, 2012, respectively.

The cases were heard by *Gants,* J.

*Edward J. McCormick, III*, for Eugene Bertini.

*Marian T. Ryan*, Assistant District Attorney (*John T. Mulcahy*, Assistant District Attorney, with her) for the Commonwealth.

*J. Gregory Batten* for Leslie Bertini.

*John T. Mulcahy*, Assistant District Attorney (*Marian T. Ryan*, Assistant District Attorney, with him) for the Commonwealth.

LENK, J. A single justice of this court, treating as petitions brought under G. L. c. 211, § 3, the defendants' respective appeals from court orders compelling each of them to provide a

buccal swab[1] for purposes of deoxyribonucleic acid (DNA) testing, denied both petitions. We are called upon to decide whether a petition under G. L. c. 211, § 3, is the appropriate means by which to seek relief from such orders and, if it is, whether the single justice erred or otherwise abused his discretion in denying the petitions. We conclude that G. L. c. 211, § 3, is the appropriate means by which a defendant may seek interlocutory relief from an order compelling the production of a buccal swab, and that, in the circumstances, the single justice properly denied the defendants' petitions.

1. *Background.* The defendants, Eugene and Leslie Bertini,[2] have been indicted on charges of armed robbery, assault and battery by means of a dangerous weapon, assault by means of a dangerous weapon, and larceny over $250, in conjunction with the robbery of a gasoline station in Wakefield. The Commonwealth sought a buccal swab from each defendant, both of whom were in custody pending trial, because a firearm and firearm magazine allegedly used in the robbery, as well as a necklace allegedly taken from a victim of the robbery, may be suitable for DNA testing,[3] and the Commonwealth intends to compare the defendants' DNA with DNA that may be recovered from those items.

In moving for an order to compel the defendants to provide buccal swabs, the Commonwealth presented the following facts. On April 25, 2011, a man wearing a hooded sweatshirt entered

---

[1] A buccal swab "involves the rubbing of a swab on the interior surface of the cheek." *Doe* v. *Senechal,* 431 Mass. 78, 79 n.4, cert. denied, 531 U.S. 825 (2000).

[2] Because the defendants, who are married, share a last name, we refer to each by his or her first name.

[3] The Commonwealth's motion states that the samples collected from the necklace, firearm, and firearm magazine are "likely to be suitable for the development of a [deoxyribonucleic acid (DNA)] profile(s)." A report prepared by the Massachusetts State police crime laboratory states that the samples were collected "for the possible recovery of DNA." At a hearing on the motion, the Commonwealth stated that "[p]reliminary testing has been conducted on [the samples] sufficient to determine that there is a likelihood of the potential of recovery of identifiable DNA from those items." See *Commonwealth* v. *Draheim,* 447 Mass. 113, 117 (2006), citing *Commonwealth* v. *Maxwell,* 441 Mass. 773, 778-779 & n. 11 (2004), and *Commonwealth* v. *Trigones,* 397 Mass. 633, 641 (1986) (motion judge may rely in part on "uncontroverted statements of a prosecutor made and recorded in open court").

a gasoline station in Wakefield carrying a firearm. He ordered the nineteen year old employee to the floor and hit the employee on the side of the head with the firearm. He additionally jabbed the firearm into the stomach of the employee's fifteen year old brother, who was inside the station, and took the brother's necklace. The robber left with approximately $300 in cash.

Soon thereafter, police reviewed video surveillance footage of the robbery and recognized Eugene, whom they knew from prior interactions. Police visited the defendants' home, but did not find either Eugene or Leslie. When Eugene learned of the visit, he telephoned the Wakefield police department, using his cellular telephone, to ask why police had been to his home. He told police that he would be willing to speak with them, but that he was in New Hampshire and would not be able to meet them in person for "some time." However, officers were able to trace the location of Eugene's cellular telephone to a motel in Saugus.

Members of the Wakefield and Saugus police departments subsequently located Eugene and Leslie in a room in the motel. After Leslie allowed the officers to enter the room, the officers saw the clothing they had observed Eugene wearing in the video surveillance footage. Leslie told the officers that she and Eugene had been in an automobile driven by her mother, that Eugene had left the automobile at an intersection near the gasoline station, that she had had an "idea" Eugene was going to conduct the robbery, that her mother had not known anything about the robbery, and that she had directed her mother to park on a side street to wait for Eugene to return to the automobile.

Police searched the motel room[4] and found the firearm they believed to have been used in the robbery.[5] After his arrest, Eugene told police that the necklace was hidden under the motel room mattress; officers subsequently located the necklace there. While Eugene was being booked, police found $300 in cash hidden in his shoes.

On January 19, 2012, the Commonwealth filed a motion in the Superior Court for an order to compel both defendants to provide a buccal swab for the purpose of DNA testing. At a

---

[4]According to the written report of a Wakefield police detective, the search of the motel room was conducted with Eugene's consent.

[5]The firearm was a "replica air/BB gun."

hearing on the motion, a Superior Court judge granted the Commonwealth's motion as to Eugene, but initially denied the motion as to Leslie, concluding that there was insufficient indication that Leslie had handled the necklace, firearm, or firearm magazine, and, therefore, insufficient reason to believe that DNA testing would lead to evidence relevant to the question of Leslie's guilt. See *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986) ("postindictment order to obtain a blood sample for identification purposes should be based on a showing of probable cause made at an adversary hearing"). The Commonwealth then argued that DNA testing should be conducted simultaneously as to both defendants, in order to prevent delay in the proceedings should testing of the necklace, firearm, and firearm magazine reveal the presence of unidentified female DNA. The judge ordered both defendants to provide buccal swabs "for use in this case only."[6]

After the defendants informed the judge, through counsel, that they would not cooperate with the court order, the judge allowed the Commonwealth's motion to employ "such reasonable force as necessary" in obtaining the swabs. The judge allowed the defendants' motions for a stay of the order so that they could pursue interlocutory appeals.

On February 2, 2012, Leslie filed an application before a single justice of this court for leave to pursue interlocutory review of the allowance of the Commonwealth's motion, pursuant to Mass. R. Crim. P. 15 (a) (2),[7] as appearing in 422 Mass.

---

[6]It appears that the Commonwealth considers Eugene a possible suspect in an unrelated investigation for which DNA evidence would form a part of the Commonwealth's case. At the motion hearing, Eugene's counsel suggested that the Commonwealth might be seeking a sample of Eugene's DNA to aid its investigation in this unrelated matter. The Commonwealth refuted this claim, asserting that DNA obtained pursuant to a court order "cannot be matched case to case." During argument before this court, the Commonwealth stated explicitly that it "will not and cannot" use the DNA obtained pursuant to the judge's order for any purpose beyond the instant case, explaining that such use is prohibited both under the terms of the judge's order and under "the protocol of the lab." The defendants offer no reason why we should not accept the Commonwealth's representations on this point.

[7]Massachusetts Rule of Criminal Procedure 15 (a) (2), as appearing in 422 Mass. 1501 (1996), provides:

"A defendant or the Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal an order determining a motion to suppress evidence

1501 (1996), and G. L. c. 278, § 28E.[8] On February 3, 2012, Eugene filed a petition for relief in the county court pursuant to G. L. c. 211, § 3.[9] The single justice treated both appeals as petitions for relief under G. L. c. 211, § 3. Concluding that the defendants "may obtain full appellate review of this issue (and any others) as part of a direct appeal if they were to be convicted," the single justice denied the petitions. Both defendants appealed to the full court, pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).

2. *Discussion.* a. *Propriety of review.* The defendants disagree as to the proper means by which to seek review of the judge's order. As stated, Leslie filed her appeal as an application for leave to pursue interlocutory review under Mass. R. Crim. P. 15 (a) (2), while Eugene filed his appeal as a petition for relief under G. L. c. 211, § 3.

The Commonwealth contends, in accordance with Leslie, that the proper means by which the defendants may seek review is an application for interlocutory review under Mass. R. Crim. P. 15 (a) (2). It further argues that the defendants' appeals from the single justice's denial of relief are therefore not properly before us, since a defendant may not appeal to the full court from a single justice's denial of an interlocutory appeal under Mass. R. Crim. P. 15. See *Cowell* v. *Commonwealth*, 432 Mass. 1028, 1028 (2000); S.J.C. Rule 2:21 (3). Leslie maintains that, notwithstanding this general rule, she should be permitted to appeal to the full court because the propriety of a court order authorizing the Commonwealth to use force in obtaining a buc-

---

prior to trial. If the single justice determines that the administration of justice would be facilitated, the justice may grant that leave and may hear the appeal or may report it to the full Supreme Judicial Court or to the Appeals Court."

[8]General Laws c. 278, § 28E, states, in relevant part:

"An application for an appeal from a decision, order or judgment of the superior court determining a motion to suppress evidence prior to trial may be filed in the supreme judicial court by a defendant."

[9]General Laws c. 211, § 3, states, in relevant part:

"The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided."

cal swab is an issue of great import. Eugene maintains that he properly petitioned for relief under G. L. c. 211, § 3, and that he therefore has a right to appeal the single justice's denial of relief to the full court.

General Laws c. 211, § 3, establishes this court's "general superintendence" power over "all courts of inferior jurisdiction." A petition pursuant to G. L. c. 211, § 3, is the proper avenue by which to seek relief where "no other remedy is expressly provided." We have previously considered appeals from pretrial orders compelling the production of DNA samples brought by way of petitions under G. L. c. 211, § 3. See, e.g., *Brown* v. *Commonwealth*, 445 Mass. 1016, 1016 (2005); *White* v. *Commonwealth*, 439 Mass. 1017, 1017-1018 (2003); *Cummins* v. *Commonwealth*, 433 Mass. 1005, 1005-1006 (2001).

The Commonwealth relies on language in *Matter of Lavigne*, 418 Mass. 831, 833 (1994) (*Lavigne*), in support of its argument that such appeals must instead be brought as applications for leave to pursue interlocutory review of an order deciding a motion to suppress. See Mass. R. Crim. P. 15 (a) (2). In *Lavigne*, *supra*, we directed that a party seeking to appeal an order granting (or denying) a police request to access a blood sample that had already been taken pursuant to a search warrant should do so pursuant to Mass. R. Crim. P. 15, even though the party had not been charged with a crime and there was no motion to suppress at issue.

We conclude that it is wise to confine the use of Mass. R. Crim. P. 15 contemplated in *Lavigne*, *supra* at 832, to the circumstances at issue there — that is, cases involving a court order permitting the Commonwealth to access blood or perhaps other bodily fluids that have already been taken pursuant to a search warrant, preindictment, and outside the context of a grand jury investigation. See *Matter of a Grand Jury Investigation*, 435 Mass. 1002, 1002-1003 (2001) (affirming denial by single justice of petition for relief under G. L. c. 211, § 3, from order compelling production of blood sample in connection with grand jury investigation; *Lavigne* described as distinguishable because blood sample there obtained pursuant to search warrant). Accordingly, we adhere to our established practice and conclude that the single justice correctly treated the defendants'

appeals as petitions for relief under G. L. c. 211, § 3. See, e.g., *Brown* v. *Commonwealth, supra; White* v. *Commonwealth, supra; Cummins* v. *Commonwealth, supra.* The defendants therefore have a right of appeal to the full court from the single justice's denial of relief. See S.J.C. Rule 2:21.

b. *Order of the single justice.* The single justice concluded that the defendants' petitions failed to meet the standard of "exceptional circumstances" involving "irremediable error" required to allow interlocutory review under G. L. c. 211, § 3. See *Beckman* v. *Commonwealth,* 377 Mass. 810, 812 (1979); *Gilday* v. *Commonwealth,* 360 Mass. 170, 171 (1971). We review a decision of the single justice denying relief under G. L. c. 211, § 3, only for "clear error of law or abuse of discretion." *Caggiano* v. *Commonwealth,* 406 Mass. 1004, 1005 (1990).

"Generally, we follow a policy of the nonappealability of interlocutory orders." *Matter of a Grand Jury Subpoena,* 411 Mass. 489, 493 (1992). "Consolidating review of all the issues raised in a case in a single, comprehensive appellate proceeding, it is hoped, eliminates some delay and also fosters better informed decisions." See *id.,* and cases cited. We therefore allow interlocutory review under G. L. c. 211, § 3, only where "there are substantial claims alleging violation of the appellant's substantive rights," and the error complained of is "irremediable so that an order for a new trial in the normal process of appeal will not put the defendant in statu quo." *Beckman* v. *Commonwealth, supra.* See *Sabree* v. *Commonwealth,* 432 Mass. 1003, 1003-1004 (2000), citing *Matthews* v. *D'Arcy,* 425 Mass. 1021, 1022 (1997), and *Greco* v. *Plymouth Sav. Bank,* 423 Mass. 1019, 1019 (1996) ("We have repeatedly held that relief under G. L. c. 211, § 3, is properly denied where there are other routes by which the petitioning party may adequately seek relief").

Here, there is no question that the defendants make substantial claims alleging violations of substantive rights, as the taking of a buccal swab implicates "the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures." *Commonwealth* v. *Maxwell,* 441 Mass. 773, 777 (2004). The single justice concluded, however, that the error complained of would not be irremediable through

the normal process of appeal, since the defendants would be able to "obtain full appellate review of this issue (and any others) as part of a direct appeal if they were to be convicted." We discern no clear error or abuse of discretion in this conclusion.

The defendants complain that the motion judge erred in ordering them each to provide a buccal swab.[10] Arguably, the defendants might be injured by the court order in two distinct ways: (1) evidence derived from the swabs might be used against the defendants at trial, resulting in the conviction of either or both defendants, and (2) the taking of the buccal swab itself might injure either of the defendants' dignity or physical person.

Here, any harm resulting from the evidentiary use to which the swabs might be put is fully remediable on direct appeal. If either of the defendants provides DNA evidence that is admitted at trial, and if the defendant is then convicted, he or she may obtain review on direct appeal of the propriety of the court order compelling the production of such evidence. To the extent that that defendant was erroneously ordered to provide the buccal swab, and to the extent that the conviction relies on evidence derived from the swab, the conviction may be vacated and a new trial ordered.[11]

Further, the taking of a buccal swab itself, without more, is not a substantial bodily intrusion warranting interlocutory review under G. L. c. 211, § 3. See *Gilday* v. *Commonwealth, supra* ("Only in the most exceptional circumstances will we review interlocutory rulings in criminal cases under our general superintendence powers"). "[A] buccal swab is no more intrusive than the taking of a blood sample," *Commonwealth* v. *Maxwell, supra,* which is itself a "relatively minor intrusion." See *Com-*

[10]A court may, postindictment, order a criminal defendant to provide a buccal swab only where the Commonwealth establishes that "the sample sought will probably provide evidence relevant to the question of the defendant's guilt." *Commonwealth* v. *Maxwell,* 441 Mass. 773, 778-779 (2004), citing *Commonwealth* v. *Beausoleil,* 397 Mass. 206, 222, 223 (1986).

[11]As stated, the motion judge ordered the defendants to provide buccal swabs "for use in this case only." Our conclusion that any harm resulting from the evidentiary use to which the swabs might be put is fully remediable on direct appeal is based in part on our understanding that the Commonwealth will not and cannot use the buccal swabs in connection with any other case or investigation. See note 6, *supra.*

*monwealth* v. *Trigones*, 397 Mass. 633, 641 (1986).[12] While the taking of a buccal swab implicates "the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures," *Commonwealth* v. *Maxwell*, *supra*, it is, without more, not so significant an intrusion as to render the intrusion irreparable through the normal process of appeal. See *Maryland* v. *King*, 133 S. Ct. 1958, 1978 (2013), quoting *Bell* v. *Wolfish*, 441 U.S. 520, 557 (1979) ("expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope' ").

However, the judge's order did not merely require the defendants each to provide a buccal swab; it further authorized the Commonwealth to use "reasonable force" in obtaining the swabs. Therefore, we must determine whether, in the circumstances, any harm resulting from the forced taking of a buccal swab would be irremediable on direct appeal. See *Beckman* v. *Commonwealth, supra.*

Eugene contends that "the harm of physical and forceful bodily intrusion is irreparable." However, as stated, the physical intrusion occasioned by the taking of a buccal swab is not so significant as to warrant interlocutory review under G. L. c. 211, § 3. While the forced, as opposed to the consensual, taking of a buccal swab likely occasions a greater level of intrusion, the judge authorized the Commonwealth to employ only "such reasonable force as necessary" to obtain the swabs. Thus, the authorization to use force will only become relevant to the degree that the defendants refuse to comply with the order — an order that is mandatory, and with which they are legally compelled to comply. See *Commonwealth* v. *Blais*, 428 Mass. 294, 300-301 (1998). The defendants have not alleged any facts suggesting that the use of force would give rise to any special, irremediable injuries in this case.[13]

In the circumstances here, we hold that the single justice did

---

[12]"Unlike a blood sample extracted by needle, a buccal swab does not involve an 'intrusion below the skin,' and is arguably more akin to a saliva sample, as it involves obtaining bodily material from inside the mouth." *Commonwealth* v. *Maxwell*, *supra* at 777 n. 9 (2004), quoting *Schmerber* v. *California*, 384 U.S. 757 769-770 (1966). See *Commonwealth* v. *Downey*, 407 Mass. 472, 477 (1990).

[13]The defendants have not alleged, for example, that they are especially

not clearly err or abuse his discretion in concluding that the errors complained of are remediable in the normal process of appeal. Accordingly, interlocutory review under G. L. c. 211, § 3, was properly denied.

*Judgments affirmed.*

vulnerable, physically or otherwise, to the force that may be employed in obtaining the buccal swabs. We do not foreclose the possibility that, under circumstances not alleged here, a court order authorizing the Commonwealth to use force in obtaining a buccal swab would be likely to result in harm that could not be remedied on direct appeal.