COMMONWEALTH *vs.* NINA M. DRAHEIM.

Suffolk. April 6, 2006. - June 27, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Deoxyribonucleic Acid. Constitutional Law,* Search and seizure. *Search and Seizure,* Probable cause, Buccal swab. *Probable Cause. Evidence,* Buccal swab, Relevancy and materiality. *Practice, Criminal,* Findings by judge.

Where a Superior Court judge, in denying the Commonwealth's motions in a criminal case to compel saliva samples from the defendant and from third parties who were not suspects, held only a truncated adversary hearing and made no findings, express or implied, indicating that she had resolved any relevant evidentiary disputes or had decided whether the Commonwealth had made a sufficient evidentiary showing to obtain the samples, this court remanded the matter for a further hearing. [117,118]

Statement of the burdens that the Commonwealth must satisfy before forcibly taking a saliva sample from a criminal defendant [117-118] and from third parties who are not suspects [118-120].

CIVIL ACTION filed in the Supreme Judicial Court for the county of Suffolk on April 26, 2005.

The case was reported by *Sosman,* J.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

*Joseph F. Krowski, Jr. (Jason C. Howard* with him) for the defendant.

*Bethany C. Brown,* for Kevin Draheim, amicus curiae, submitted a brief.

COWIN, J. We are concerned here with indictments against the defendant, a married woman, for rape of two teenaged boys.[1] The Commonwealth alleges that the defendant's sexual intercourse resulted in the birth of a child by each complainant. The Commonwealth filed motions in each case to compel saliva

---

[1]The defendant also faces other indictments that will be detailed below.

samples (e.g., buccal swabs[2]) from the defendant, the child, and the complainant for the purpose of DNA (deoxyribonucleic acid) testing to establish whether the complainant in each case is the father of the child involved. A judge in the Superior Court denied the motions and the Commonwealth filed a petition with the county court for relief pursuant to G. L. c. 211, § 3. A single justice reserved and reported the case. We vacate the decisions of the judge and direct the entry of an order in the county court that the matter be remanded for further hearing consistent with this opinion.

1. *Background.* We recite the background of this case as drawn from the pleadings below; the Commonwealth's petition pursuant to G. L. c. 211, § 3; testimony and exhibits presented to the grand jury; and an order of the Probate and Family Court.[3] The charges of rape of a child facing the defendant, Nina M. Draheim, stem from the alleged rapes of two boys.[4] Draheim was married at the time of the charged crimes, and she had a child approximately nine months after each of the incidents. As stated, the Commonwealth seeks DNA samples from Draheim, her two children, and the two complainants in order to conduct paternity testing that could provide evidence that the rapes occurred.

Draheim is first alleged to have raped JG,[5] a fourteen year old boy, on multiple occasions "on or between October 29, 2000 and November 14, 2000." In regard to this indictment, the Commonwealth presented the following testimony to a grand jury. A former friend of Draheim testified that Draheim had admitted "having sex" with JG, and one of JG's friends and a police detective testified that JG said he had sexual relations with Draheim. Also submitted to the grand jury was a report of

---

[2]"A buccal swab . . . test involves [] rubbing [] a swab on the interior surface of the cheek to obtain cells that are then evaluated . . . for deoxyribonucleic acid (DNA) analysis." *Doe* v. *Senechal,* 431 Mass. 78, 79 n.4, cert. denied, 531 U.S. 825 (2000).

[3]Following oral argument, the Commonwealth moved to expand and supplement the record. The motion is allowed. It does not, however, affect our decision.

[4]The evidence does not indicate that the sexual acts were nonconsensual. Given the age of the complainants, however, consent is irrelevant. See G. L. c. 265, § 23; *Commonwealth* v. *Elder,* 389 Mass. 743, 752 n.14 (1983).

[5]We use initials for both minor complainants.

a police interview with JG in which he said that he "had sex" with Draheim.[6]

The first indictment charging rape of a child was returned on December 22, 2000. On November 29, 2001, over the Commonwealth's objection, the defendant received pretrial probation for two years.[7,8]

Draheim was subsequently indicted for engaging in sexual acts with CG, a fifteen year old boy, between June 1, 2003, and September 1, 2003. These indictments consisted of three indictments charging rape of a child and two indictments charging indecent assault and battery on a person fourteen years or older. At the time, she was still on pretrial probation in connection with the previous child rape indictment. As a result of the new offenses, her pretrial probation was revoked and the earlier case was restored to the active trial list.[9]

The evidence that the Commonwealth presented to support the second set of indictments consists of the complainant's statements that "he had had sex" with the defendant. These statements were in the form of a police report, a handwritten statement from the complainant, and a videotape of a police interview. A friend of Draheim testified that Draheim would not tell her whether she had intercourse with CG, but the friend stated that she had witnessed CG and Draheim kissing.

Draheim's family situation is as follows. She delivered her first daughter, Abby,[10] on July 20, 2001, approximately thirty-

---

[6]The evidence before the grand jury is set forth by way of background and, once the grand jury returned an indictment, has no effect on the outcome.

[7]Based on a fight with the complainant's father and the father's girl friend, the defendant was also indicted for assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*), and breaking and entering in the nighttime, G. L. c. 266, § 16. Draheim pleaded guilty to these two indictments, and on November 29, 2001, was placed on probation for two years.

[8]The defendant was placed on pretrial probation on November 29, 2001. After that date, in *Commonwealth* v. *Tim T.*, 437 Mass. 592, 597 (2002), we held that a judge may not, over the Commonwealth's objection, impose a "substantial" period of pretrial probation under G. L. c. 276, § 87. (The length of the pretrial probation at issue there was two years. *Id.* at 593.)

[9]Her probation on the two other indictments (see note 7, *supra*) was also revoked, and she was sentenced to one year in the Plymouth County house of correction, two months to be served, the balance suspended.

[10]We use pseudonyms for both children.

five to thirty-eight weeks after the period of the alleged rapes of the first complainant. She delivered her second daughter, Kate, on or about June 9, 2004,[11] approximately forty to fifty-three weeks after the period of the alleged rapes of the second complainant.

The defendant was married to Kevin Draheim at the time of all the alleged rapes. He is named as the father on the birth certificate of the first child, Abby, and has always acted as such. Kevin Draheim filed for divorce on August 29, 2003, and was awarded sole legal and physical custody of Abby on December 8, 2003. At one point during the custody dispute concerning Abby, the defendant testified that Kevin Draheim was not Abby's biological father and moved to require genetic testing to establish Abby's paternity. A judge in the Probate and Family Court denied the motion.

The situation as to the defendant's second daughter, Kate, is different. The defendant and Kevin Draheim agree that Kate, who was conceived after the deterioration of their marriage, is not Kevin Draheim's biological child. The record is silent as to who currently has legal and physical custody of Kate.

As stated, the Commonwealth moved for an order requiring the defendant, both the defendant's minor children, and the two complainants to provide buccal swabs, or saliva samples, for collection of DNA samples. The Commonwealth's motions stated that each sample "will probably produce evidence relevant" to the defendant's guilt, namely whether either complainant was the biological father of either of the defendant's children. The motions also provided that taking a buccal swab would be a "relatively minor intrusion" on those subject to the order. In support of its motions to compel buccal swabs, the Commonwealth submitted affidavits and grand jury transcripts.

An affidavit of a supervisor at the State police crime laboratory included with each of the Commonwealth's motions to compel explained that DNA "standards" of the defendant, the

---

[11]Nothing in the record establishes definitively the date of the birth of the second child. The Commonwealth's affidavit in support of its motion to compel a buccal swab states that "[o]n or about June 9, 2004, the defendant's mother reported to [a probation officer] that the defendant had given birth" to a second child.

complainant, and the child in each case will allow analysis and comparison that will "provide evidence of paternity . . . and permit expert opinion . . . as to the paternity of the child."

A hearing on the Commonwealth's motions to compel buccal swabs was held. In addition to attorneys for the defendant and the Commonwealth, an attorney representing Kevin Draheim (the legal and physical custodian of Abby) was present. The judge stated that she had read one of the Commonwealth's motions and would not grant it because of the potential consequences for Abby and Kevin Draheim, and that the Commonwealth would have to "prove [the charges] as if there was no child." The judge also denied the motion as to the second complainant without further explanation. These proceedings followed.

2. *Discussion.* The Commonwealth moved to compel the defendant, the complainants, and the children to submit saliva samples through buccal swabs. A government-compelled buccal swab implicates the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures. See *Commonwealth* v. *Maxwell*, 441 Mass. 773, 777 (2004). Thus, before forcibly taking a saliva sample, the Commonwealth must satisfy a burden that takes into consideration those protections. We address the Commonwealth's burdens regarding the defendant and the third parties (the complainants and the children) in turn.

a. *The defendant.* The Commonwealth's burden with regard to the defendant is clear. See *Commonwealth* v. *Maxwell, supra* at 778-779. First, it must establish that there is probable cause to believe that the defendant has committed a crime. See *id.* at 777. This burden is obviously satisfied by the indictment. See *id.* at 778. The Commonwealth must also show that the sample sought "will probably provide evidence relevant to the question of the defendant's guilt." *Id.* at 778, quoting *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986). The Commonwealth must make that showing at an adversary, though not necessarily evidentiary, hearing; the judge may act on an indictment, affidavit, and uncontroverted statements of a prosecutor made and recorded in open court. See *Commonwealth* v. *Maxwell, supra* at 778-779 & n.11; *Commonwealth* v. *Trigones, supra* at 641.

Regardless whether the issues are contested, she must make findings (express or at least implied) indicating that she has resolved any relevant evidentiary disputes and decided whether the Commonwealth has made a sufficient showing to obtain the sample. Here, although there was an adversary hearing, it was a truncated one; the judge made no express findings; and none can be implied from her denial of the motions. Accordingly, we must remand the matter for further hearing consistent with the principles discussed above and with those enumerated below.

b. *Third parties.* The Commonwealth's burden with regard to the complainants and the children presents a novel question.[12] Never before have we determined in a criminal case whether or in what circumstances the Commonwealth can obtain a sample of physical evidence from the body of a third party. To be sure, we have concluded that a *defendant* can compel a third party to submit to a buccal swab. See *Jansen, petitioner,* 444 Mass. 112 (2005). Where we have held that the *Commonwealth* can forcibly take a physical sample from a person not charged with a crime, the person was at least a suspect under investigation. See *Matter of Lavigne,* 418 Mass. 831, 833 (1994) (uncharged person from whom Commonwealth sought blood sample was "prime suspect" in murder). See also *Commonwealth* v. *Williams,* 439 Mass. 678, 680-681 (2003) (person from whom grand jury sought blood, hair, and saliva samples was suspect in murder); *Matter of a Grand Jury Investigation,* 427 Mass. 221, 222, cert. denied sub nom. *A.R.* v. *Massachusetts,* 525 U.S. 873 (1998) (persons from whom grand jury sought blood samples were suspects in rape).

---

[12]Although the Commonwealth relied on no particular authority for seeking the samples from the third parties, the appropriate mechanism for obtaining "books, papers, documents, or other objects" from a third party is Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979). See, e.g., *Jansen, petitioner,* 444 Mass. 112, 117 (2005) (treating saliva as "object" for purposes of defendant's request under rule 17 [a] [2] for buccal swab from third party). Rule 17 (a) (2) is available to the Commonwealth as well as a defendant. See *Commonwealth* v. *Cote,* 407 Mass. 827, 830-831, 836 (1990) (Commonwealth able to obtain records of third party pursuant to rule 17 [a] [2]). Under the revised version of Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004) (effective after the indictments were returned in this case), the Commonwealth can seek from a defendant "discovery of . . . material and relevant evidence not required by" the provisions of rule 14 concerning mandatory discovery from a defendant. See Mass. R. Crim. P. 14 (a) (2).

Here, neither the complainants nor the children are criminal suspects — quite the contrary. But that fact alone does not prevent the Commonwealth from being able to obtain potentially relevant evidence. We conclude that so long as the Commonwealth satisfies the requirements of both the Fourth Amendment and Mass. R. Crim P. 17 (a) (2), 378 Mass. 885 (1979), it should be permitted the same access as defendants to potentially beneficial evidence from third parties. See *Jansen, petitioner, supra.* In order to respect the third parties' constitutional rights, the Commonwealth must meet an appropriate burden.

In cases where the Commonwealth seeks to obtain a physical sample from a suspect not under grand jury investigation, it must show probable cause to believe that the suspect committed a crime and that the evidence sought would aid in the Commonwealth's investigation. See *Matter of Lavigne, supra* at 835-836. Here, where the third parties are not suspects, in order to respect the third parties' constitutional rights, the Commonwealth must show probable cause to believe *a* crime was committed, and that the sample will probably provide evidence relevant to the question of the defendant's guilt. See *State* v. *Register*, 308 S.C. 534, 538 (1992) (holding State could compel blood, hair, and saliva samples from third-party nonsuspect where State showed probable cause crime committed by particular suspect and "a clear indication that material evidence relevant to the question of the suspect's guilt will be found"). Additional factors concerning the seriousness of the crime, the importance of the evidence, and the unavailability of less intrusive means of obtaining it are germane. See *Matter of Lavigne, supra* at 836.

In this case, the Commonwealth's burden to show probable cause that a crime has been committed is easily met because the defendant has been indicted. The Commonwealth must prove additionally that the saliva samples will probably provide evidence relevant to the defendant's guilt, and the judge must make a finding on this issue. As with the other cases discussed above involving attempts by the Commonwealth to obtain physical samples from a person's body, the judge should consider the seriousness of the crime, the importance of the evidence, and the unavailability of less intrusive means of obtaining it. The

complainants and children must be given notice and an opportunity to be heard at an adversary hearing of the type described above. See *Commonwealth* v. *Maxwell*, *supra* at 778.

Because the defendant and Kevin may not effectively represent the interests of — or may have positions in conflict with those of — the children, the judge should consider whether to appoint a guardian ad litem for either or both of the children. We emphasize, however, that, although other factors are involved, the allowance or denial of the Commonwealth's motions hinges primarily on whether it has satisfied its burden of establishing that the DNA evidence will probably provide evidence relevant to the defendant's guilt.[13] Resolution of the motions does not hinge on, nor should it be influenced by, the extraneous considerations relied on by the judge below.

For the foregoing reasons, the orders denying the motions to compel are vacated, and an order is to enter in the county court that the matter is remanded for further hearing consistent with this opinion.

*So ordered.*

---

[13]At oral argument the Commonwealth represented that it has proposed a protective order to prevent any test results from being disclosed other than in the criminal case.