ANTHONY MARTIN *vs.* COMMONWEALTH.

Suffolk. January 10, 2008. - April 9, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Evidence,* Privileged record, Communication between patient and psychotherapist, Report of licensed social worker, Relevancy and materiality. *Due Process of Law,* Access to evidence.

This court determined that a claim for relief pursuant to G. L. c. 211, § 3, was properly before it, where the question presented was one of significant importance that affected the fair administration of criminal justice. [119]

In denying the criminal defendant's motion for production of treatment records of the Department of Social Services (department) concerning the complainant, the judge erred in concluding that communications that the complainant had made pertaining to the subjects of child custody and adoption placement were absolutely protected under the statutes creating a social worker or psychotherapist privilege, and for that reason wholly insulated from disclosure to the defendant [119-120]; accordingly, this court remanded the case for proceedings consistent with stage 4(b) of the protocol set forth in *Commonwealth* v. *Dwyer,* 448 Mass. 122 (2006) (inspection by defense counsel of presumptively privileged records), where the defendant had acknowledged that the department records were presumptively privileged, where the defendant had satisfied his burden of demonstrating that the records were relevant to his defense, where no source other than the department existed for the records, where the absence of pretrial production would delay the trial, and where the defendant was not engaged in a "fishing expedition" [120-122]; moreover, this court concluded that third parties other than the complainant need not be permitted to be heard on the issues of privilege and relevancy, even though such records might incidentally divulge personal information concerning others [123].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 14, 2006.

The case was reported by *Spina,* J.

*Beth L. Eisenberg,* Committee for Public Counsel Services, for the defendant.

*Kevin J. Curtin,* Assistant District Attorney, for the Commonwealth.

MARSHALL, C.J. Anthony Martin (defendant) petitioned a single justice of this court for relief pursuant to G. L. c. 211, § 3, challenging an order of a judge in the Superior Court denying his motion for pretrial production of privileged records of the Department of Social Services (department) concerning the complainant. See Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979). While recognizing that the social worker-client and psychotherapist-patient privileges applied to the records, see G. L. c. 112, § 135A, and G. L. c. 233, § 20B, the judge concluded that, although relevant to the defense, the records were not subject to *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996), and *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993) (*Bishop-Fuller* protocol), because they concerned what the judge described as the "absolutely protected" subjects of child custody and adoption placement. The single justice stayed the proceedings in the Superior Court and reserved the case and reported the matter to the full court.

While the defendant's petition was pending, we replaced the *Bishop-Fuller* protocol with a protocol set forth in *Commonwealth* v. *Dwyer*, 448 Mass. 122 (2006) (*Dwyer*). The *Dwyer* protocol is applicable to all criminal cases tried after issuance of the rescript in that case, *id.* at 124, and therefore applies to this case. We vacate the Superior Court judge's order. Records privileged pursuant to G. L. c. 112, § 135B, G. L. c. 233, § 20B, or any other statute, were subject to the *Bishop-Fuller* protocol, and are subject to the *Dwyer* protocol, regardless of their subject matter. The single justice will remand the case to the Superior Court for further proceedings consistent with this opinion.

1. *Background.* On July 16, 2005, a grand jury returned several indictments charging the defendant with aggravated rape, kidnapping, assault and battery by means of a dangerous weapon, and assault and battery.[1] The Commonwealth's "statement of the facts"[2] asserts, in relevant part, that in November, 2004, the complainant, who had a history of drug addiction and prostitu-

[1] The charges against the defendant involve two different complainants. The issues presently before us concern records sought in connection with the indictments charging crimes committed against only one complainant.

[2] The "statement of the facts" is drawn from the Commonwealth's unsworn "statement of the case" filed in the Superior Court in which the Commonwealth noted that the statement did not "contain all the evidence known to the Com-

tion and a "lengthy" criminal record, had been "clean" for approximately ten months. That month she encountered the defendant outside a convenience store; she knew the defendant because she previously had purchased drugs from him, and she had on occasion agreed to have sexual intercourse with him in exchange for drugs. At the complainant's request, the defendant agreed to drive her home. Instead, however, he brought her to a motel, where he held her captive for two months until she finally escaped. During her captivity, the defendant subjected the complainant to brutal physical and sexual assaults and forced her to ingest heroin, causing her to become readdicted.

On July 31, 2006, on completion of discovery, the defendant moved pursuant to rule 17 (a) (2) for the production of the complainant's treatment records from the department and other record holders.[3] Following the procedures required under *Commonwealth* v. *Lampron*, 441 Mass. 265, 270-271 (2004) (*Lampron*), and the *Bishop-Fuller* protocol, the defendant sought a subpoena[4] for the production of nonprivileged records or an assertion of privilege against the production of privileged records. The motion was accompanied by an eleven-page affidavit of defense counsel.[5]

The affidavit sought the records as relevant to the motive of the complainant, a mother of two young children, to "fabricate"

monwealth and cannot substitute for a Bill of Particulars." We express no view on the validity of any factual assertion.

[3] The only records at issue in this appeal are those of the Department of Social Services (department).

[4] The defendant should have sought a "court summons" or "court-ordered summons" to be issued on judicial order. See *Commonwealth* v. *Lampron*, 441 Mass. 265, 270 (2004) (*Lampron*) (only judge has authority under Mass. R. Crim. P. 17 [a] [2], 378 Mass. 885 [1979], to direct nonparty to produce documents prior to trial).

[5] *Lampron, supra* at 269, quoting *United States* v. *Nixon*, 418 U.S. 683, 699-700 (1974), provides that a party moving to summons documents pursuant to rule 17 (a) (2) prior to trial must establish good cause by showing: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " See *Commonwealth* v. *Mitchell*, 444 Mass. 786, 792 (2005) (summarizing these requirements as "relevance, admissibility, necessity, and specificity").

her allegations and to make the defendant "a scapegoat" in order to convince the department and the Probate and Family Court, where cases involving custody of her two children were purportedly pending, that she was blameless for her two-month absence from drug treatment programs, her missed probation appointments and court appearances, and her relapse into heroin use. The affidavit contained numerous excerpts from a video-taped interview of the complainant by the Massachusetts Bay Transportation Authority (MBTA) police. See *Lampron, supra* at 270-271 (hearsay in affidavit supporting rule 17[a] [2] motion is permitted provided source of hearsay is identified and hearsay is reliable). In the interview, the complainant maintained that, for the ten months prior to November, 2004, she had been "clean" and had kept all probation and court appointments. She expressed concern that her missed probation and court appointments and heroin readdiction would adversely affect her attempts to convince the department that she should have access to and custody of her children. The complainant told the MBTA police that she was residing in a shelter because the department would not allow her to live with her nine year old son and that she was involved in a "full-blown custody trial for my [five year old] daughter."

The Commonwealth responded to the defendant's motion by filing a "complaining witness assertion of statutory and common law privileges and confidentiality rights," in which the complainant specifically invoked the psychotherapist-patient privilege, G. L. c. 233, § 20B, and the social worker-client privilege, G. L. c. 112, §§ 135A and 135B.[6]

Although no *Lampron* hearing was held, on August 11, 2006, a court summons signed by the judge was issued to the department ordering it to deliver to the clerk's office any nonprivi-

---

[6]Communications between social workers and their clients are made confidential by G. L. c. 112, § 135A, and privileged by G. L. c. 112, § 135B. *Commonwealth* v. *Vega*, 449 Mass. 227, 230 (2007). Communications to licensed psychologists are made confidential by G. L. c. 112, § 129A, and privileged from testimonial disclosure pursuant to G. L. c. 233, § 20B. *Id* at 229-230. The *Bishop-Fuller* protocol required the privilege holder to assert any applicable social worker-client and psychotherapist-patient privileges. See, e.g., *Commonwealth* v. *Pelosi*, 441 Mass. 257, 261 (2004); *Commonwealth* v. *Oliveira*, 438 Mass. 325, 331 (2002).

leged records it possessed relating to services provided to or concerning the complainant for the period January, 2002, to March, 2005. The summons also ordered the department to withhold any privileged records, but required the department to identify any withheld privileged document by title or general description, and to state in writing each privilege claimed and the factual basis for the claim. On August 21, 2006, the department responded that its record check indicated no history for the complainant.

On August 30, 2006, the defendant moved for a further order for the complainant's department records in which he asserted that the department's reply to the first court summons was erroneous. That same day, the judge signed an order directed to the keeper of the records of the department. This order required delivery of all nonprivileged records "relating to the parental fitness" of the complainant, including records of all communications between the complainant and her caseworker.[7] The order again required the department's keeper of the records not to produce privileged records, but to identify them in the same manner as previously ordered.

On September 8, 2006, the department delivered both nonprivileged and privileged records to the clerk, together with an affidavit of counsel for the department identifying the records regarding the complainant that the department claimed were privileged.[8] Specifically, counsel identified the social worker's case notes, letters, clinical team reports, and department service plans as privileged pursuant to G. L. c. 112, § 135A, drug treatment records as prohibited from disclosure pursuant to G. L. c. 111E, § 18, and records of Juvenile Court proceedings as prohibited from disclosure pursuant to G. L. c. 119, § 65.[9]

On September 11, 2006, the defendant filed two motions

---

[7]The second order identified the complainant with greater specificity by providing her date of birth, the names and dates of birth of her two children, and by describing her as a party to a Juvenile Court case, whose docket number was included in the order.

[8]As to the privileged records, delivery of the documents to the court was contrary to the judge's order.

[9]The defendant challenges only those records that the department claimed were privileged pursuant to G. L. c. 112, § 135A, or as to which the complainant asserted a privilege pursuant to G. L. c. 233, § 20B, or G. L. c. 112, § 135B. See note 6, *supra*.

concerning any records the department claimed to be privileged: a motion for privilege determination[10] (*Bishop-Fuller* stage 1) and a motion for a "determination of relevancy" (*Bishop-Fuller* stage 2).[11] In support of the latter motion, the defendant relied on the previously filed affidavit of his counsel.

On September 12, 2006, the judge held a nonevidentiary hearing on the motions. Prior to the hearing and during a break in the proceedings, the judge reviewed in camera the records that counsel for the department had filed with the clerk and identified as privileged.[12] Following her review, the judge stated that the records concerning conversations among the complainant and the department social workers on the subjects of child custody, adoption, or adoption consent were "privileged." However, the judge declined to apply the *Bishop-Fuller* protocol on the theory that their subject matter made them "absolutely protected" from disclosure; she ruled, over the defendant's objection, that she would not make a relevancy determination as required by *Bishop-Fuller* stage 2.[13] Notwithstanding, the judge stated that the records she had reviewed were in her view relevant, informing defense counsel: "I would consider [some of these records] relevant given what you've told me. And even, I think

---

[10]The motion was titled "motion for privilege determination and release of nonprivileged records of Department of Social Services." By the time of the hearing on the motion, the judge had ordered that the nonprivileged records be copied and made available to defense counsel.

[11]For a summary of the stages of the *Bishop-Fuller* protocol, see, e.g., *Commonwealth* v. *Pelosi*, 441 Mass. 257, 260 & n.4 (2004) (*Pelosi*).

[12]Review of purportedly privileged records at that stage of the proceedings was inconsistent with the *Bishop-Fuller* protocol, see *Pelosi, supra,* and with the now applicable *Dwyer* protocol.

[13]The judge recorded her ruling on the defendant's motion for a privilege determination as follows:

> "The [department] records are privileged pursuant to [G. L.] c. 112, § 135A, and G. L. c. 233, § 20. Because *all* the [department] records pertain to child custody and adoption placement issues, the records, albeit the relevance of some, *are absolutely protected.* [The defendant's] motion that, at least the relevant records be produced to him, is denied" (emphasis added).

See note 6, *supra,* describing the relevant statutes as G. L. c. 112, § 135B, and G. L. c. 233, § 20B.

there are a couple that I think would be relevant for other reasons."

The defendant's petition for relief to the single justice followed.

2. *Discussion.* a. *Relief under G. L. c. 211, § 3.* Although the Commonwealth does not challenge the defendant's claim for relief under G. L. c. 211, § 3, we consider whether the case is properly before us. Here, the judge's determination that the department records pertaining to adoption and child custody are "absolutely protected," and therefore could not be made available to a defendant in a criminal trial even if "relevant" to his defense, is a question of significant importance that affects the fair administration of criminal justice. See, e.g., *Commonwealth v. Mitchell,* 444 Mass. 786, 790 n.8 (2005). Where the single justice has, in his discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported. See, e.g., *Pare v. Commonwealth,* 420 Mass. 216, 218 n.1 (1995), citing *Burke v. Commonwealth,* 373 Mass. 157, 158-159 (1977). We proceed to the merits.

b. *The* Bishop-Fuller *proceedings.* It was error for the Superior Court judge to conclude that communications made to social workers or psychotherapists pertaining to the subjects of child custody or adoption were "absolutely protected" under the statutes creating a social worker or psychotherapist privilege, and for that reason wholly insulated from any disclosure to a criminal defendant. Records protected by all statutory privileges, including the social worker and psychotherapist privileges, were subject to the *Bishop-Fuller* protocol, and are now subject to the *Dwyer* protocol. See *Commonwealth v. Oliveira,* 431 Mass. 609, 616-617 (2000) (noting that *Bishop-Fuller* protocol applies to any statutorily privileged records). See also *Commonwealth v. Maxwell,* 441 Mass. 773, 779 (2004), quoting *Commonwealth v. Sheehan,* 435 Mass. 183, 195-196 (2001) (Sosman, J., concurring) ("The Legislature has accorded a privilege to many types of records that are often sought in prosecutions for sexual assault, but the legislative creation of such privileges cannot trump a defendant's constitutional right to a fair trial").[14] For

---

[14]There is an additional reason why the judge's ruling was incorrect. At the hearing she stated that she had relied on G. L. c. 233, § 20B (*c*), and G. L.

these reasons, we vacate the judge's order that the department records pertaining to the complainant were "absolutely protected" and denying, on that basis, the defendant's request for a relevancy determination.

c. *Procedures on remand.* The Commonwealth and the defendant agree that we must remand the case for further proceedings consistent with the *Dwyer* protocol. They disagree, however, as to which stage of the *Dwyer* protocol should govern on remand.[15] The defendant argues that stage 4(b) of the *Dwyer* protocol is appropriate, as the department records have been produced and reviewed by the judge who stated several times that at least some of the records are relevant to his defense. The Commonwealth responds that stage 1 of the *Dwyer* protocol is appropriate, as this would allow the complainant and the department to be notified of the *Lampron* hearing and afforded an opportunity to be heard on whether the records sought are statutorily privileged and relevant. The Commonwealth also contends that, on remand, parties in addition to the complainant and the department, namely, the two children involved in the adoption, their biological father, and the two "putative" adoptive parents, should receive notice of the *Lampron* hearing and be provided an opportunity to be heard. For the reasons we now discuss, we remand the case for proceedings consistent with stage 4(b) of the *Dwyer* protocol.

c. 112, § 135B (*c*), to conclude that there was an absolute protection from production of records concerning child custody or adoption. But contrary to the judge's interpretation, those two statutory provisions limit, rather than expand, the scope of the psychotherapist-patient privilege and social worker-client privilege. In the case of both statutes, a patient or client may *not* claim the protections of G. L. c. 233, § 20B (*c*), or G. L. c. 112, § 135B (*c*), in certain proceedings. See, e.g., *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 447-449 (2001).

At the hearing, the judge also noted her concern regarding the applicability of G. L. c. 210, § 5C, concerning the confidentiality of adoption records, to the department documents. The judge did not, however, base her ruling on that statute.

[15]Stage 1 is the filing and service of a motion pursuant to rule 17 (a) (2); stage 2 is the *Lampron* hearing and judicial findings; stage 3 is the summons and notice to the record holder; stage 4 addresses inspection of records. Stage 4(a), which is not relevant to this appeal, addresses inspection of nonpresumptively privileged records; stage 4(b) addresses inspection of presumptively privileged records. *Dwyer, supra* at 147-150 (Appendix).

In *Dwyer*, *supra* at 145, we emphasized that when a defendant seeks pretrial inspection of a third party's records that are likely to be covered by a statutory privilege, both the record holder and the third-party subject must be afforded notice and an opportunity to be heard on the subjects of privilege and relevance (*Dwyer* stage 1). We noted the importance of the *Lampron* hearing and the requirement that the judge make findings that the records are presumptively privileged, and that the defendant seeking the records has satisfied the four *Lampron* requirements (*Dwyer* stage 2), *id.* at 141-142 & 148 (Appendix), before the judge could order a summons to issue directing the record holder to deliver presumptively privileged records to the court (*Dwyer* stage 3), *id.* at 146 & 148-149 (Appendix).

In the circumstances of this case, however, nothing would be accomplished by allowing the complainant or the department to be heard on the question of privilege, as the defendant has acknowledged that the department records are presumptively privileged and should be treated as such. Nor would anything be accomplished by providing the complainant or the department an opportunity to be heard on the issue of relevancy. Defense counsel's lengthy affidavit detailing his theory of the defense and the relevancy of the department records to that defense, as well as his argument in the Superior Court,[16] are sufficient to conclude that the defendant has satisfied his burden under each of the four prongs required by *Lampron*. See *Dwyer*, *supra* at 141-142 (commenting on *Lampron*'s requirements, and

---

[16]At the hearing before the judge, defense counsel again cogently summarized the defendant's relevancy argument as follows: "[T]he claim here is not just that [the complainant] talked about the alleged kidnapping when she came back [to the department], certainly we want to see [those documents], and that sounds like it's clearly relevant, but that [the complainant's] motive for telling such a gruesome story is to overcome the years of her failing to perform for [the department] sufficiently to have custody of her children . . . . The reason [the complainant] had to come up with this story, to explain why she disappeared for two months, and why she stopped giving clean urines, and why she was obviously in bad shape when she did reappear and eventually put herself into a detox is because [the department had] been giving her . . . one last chance and one last chance to straighten herself, to show that she can maintain her sobriety as a condition of gaining access to her children. And in the case of the little girl, [the complainant] was actively fighting an adoption. . . . So, [the complainant] had gotten to the end of the line [with the department]."

emphasizing that defendant must satisfy each). Defense counsel's affidavit established a specific basis for the relevancy of the requested documents, and identified the source (the complainant's interview with the MBTA police) and reliability of the hearsay. The affidavit detailed the complainant's involvement with the department and her concern that her two-month absence and renewed heroin use would jeopardize her access to and custody of her children. In light of the affidavit's reliance on the complainant's own words to establish her possible fabrication, we are confident that nothing the complainant could assert at a *Lampron* hearing would alter a determination of relevancy.

Defense counsel's affidavit also affirmatively demonstrates that no source other than the department likely exists for the records. In her interview with the MBTA police, the complainant repeatedly stressed that, for the ten months preceding her alleged kidnapping, she had faced her social worker "with my head held high," but now worried that the department believed "I disappeared off the face of the earth and relapsed again," which would jeopardize the custody determination involving her children. She repeatedly urged the MBTA police to write down the telephone number of her social worker, and to contact him.

The third and fourth *Lampron* requirements "both serve as a reminder that rule 17 (a) (2) is not a discovery tool . . . and that [its] limited purpose . . . is to authorize a court to 'expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials' " (citation omitted). *Dwyer, supra* at 142, quoting *United States* v. *Nixon,* 418 U.S. 683, 698-699 (1974). The defendant has satisfied this burden: the absence of pretrial production of the department records concerning the complainant would delay the trial, and the specificity of defense counsel's affidavit substantiates that the defendant is not engaged in a prohibited fishing expedition. Last, as the department records have already been summonsed to and received by the court, the requirements of *Dwyer* stage 3 have been satisfied. In remanding the case for proceedings consistent with stage 4(b) of the *Dwyer* protocol, we emphasize the unique posture of this case. As *Dwyer, supra* at 145 & n.27, makes clear, judges, clerks, and counsel must adhere to every stage of the *Dwyer* protocol.[17]

---

[17]In describing stage 4(b), *Dwyer* states: "The clerk of court shall permit ·

Although not necessary to do so, we address and reject the Commonwealth's claim that third parties other than the complainant, i.e., her two children, their biological father, and the putative adoptive parents, should be permitted to be heard on the issues of privilege and relevancy. The defendant sought records relating to the complainant. Of necessity such records may incidentally divulge personal information concerning others. For purposes of the *Dwyer* protocol, however, the complainant and the department are the only third parties with standing to participate in a *Lampron* hearing.[18] Certainly, the privacy and other protected interests of persons who may be referred to in presumptively privileged records warrant protection.[19] To that end, the *Dwyer* protocol prohibits the disclosure of all presumptively privileged records to counsel until he or she has signed and filed with the court a stringent protective order in the form promulgated by this court.[20] See *Dwyer, supra* at 146. We need not detail here the restrictions we impose on counsel who review presumptively privileged records, restrictions that must be adhered to both before and after disclosure. Those restrictions adequately safeguard the privacy and other protected interests of any persons who may be referred to in the department records pertaining to the complainant.

3. *Conclusion.* The judge's orders on the defendant's motion for privilege determination and for a judicial determination of relevancy are vacated. The matter is remanded to the single justice to enter an order vacating the judge's orders and remand-

only defense counsel who obtained the summons to inspect the records, and only on counsel's signing and filing a protective order in a form approved by this court." *Dwyer, supra* at 149 (Appendix). We approved a protective order, as well as other forms necessary to implement the *Dwyer* protocol, in an order dated December 29, 2006. These forms were superseded and replaced in an order dated November 30, 2007.

[18]In any criminal case, the keeper of records summonsed has an obligation to produce only the records specifically summonsed by court order. In this case, pursuant to the then-applicable *Bishop-Fuller* protocol, the department's written identification of privileged records described records properly responsive to the court summons.

[19]A judge may order that even nonpresumptively privileged records be subject to an appropriate protective order. *Dwyer, supra* at 149 n.5 (Appendix).

[20]See note 17, *supra.* The Commonwealth may also use Mass. R. Crim. P. 17 (a) (2) to seek pretrial production from third parties. See *Commonwealth* v. *Draheim,* 447 Mass. 113, 118 n.12 (2006), and cases cited.

ing the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*