NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11766

COMMONWEALTH  vs.  CHRISTOPHER KOSTKA.


Suffolk.     February 3, 2015. - June 17, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly,
& Lenk, JJ.


Contempt.  Practice, Criminal, Contempt.  Constitutional Law,
    Search and seizure.  Deoxyribonucleic Acid  Search and
    Seizure, Buccal swab, Probable cause.  Probable Cause.
    Evidence, Buccal swab, Relevancy and materiality, Third-
    party culprit.



    Adjudication of contempt in the Superior Court Department
by Jeffrey A. Locke, J., on April 9, 2013.

    After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


    John H. Cunha, Jr. (Charles Allan Hope with him) for the
defendant.
    Teresa K. Anderson, Assistant District Attorney (Ursula A.
Knight, Assistant District Attorney, with her) for the
Commonwealth.
    William Trach, Laura Carey, P.R. Goldstone, & Chauncey B.
Wood, for Massachusetts Association of Criminal Defense Lawyers,
amicus curiae, submitted a brief.


    DUFFLY, J.  The Commonwealth seeks to compel Christopher

Kostka[1] to provide a saliva sample from which it may obtain Christopher's deoxyribonucleic acid (DNA). The Commonwealth filed a motion in the Superior Court to compel the taking of a saliva sample, arguing that a DNA sample is necessary in order to determine whether Christopher is the identical or fraternal twin of his brother, Timothy Kostka, who has been indicted on charges of murder in the first degree and armed home invasion.[2] Christopher is not a suspect in that case. A judge of the Superior Court allowed the Commonwealth's motion and ordered Christopher to provide a buccal swab;[3] Christopher refused to comply, and a judgment of contempt was entered against him. After the Appeals Court affirmed the judgment, Commonwealth v. Kostka, 86 Mass. App. Ct. 69, 72-73 (2014), we granted Christopher's application for further appellate review. We conclude that the Commonwealth has not made the requisite showing, see Commonwealth v. Draheim, 447 Mass. 113 (2006), to support the compelled production of a DNA sample from an

_____

[1] Because the brothers in this case share a last name, we refer to them by their first names.

[2] According to the Superior Court docket sheet, the case against Timothy Kostka has been continued by agreement until September 14, 2015.

[3] "A buccal swab . . . test involves the rubbing of a swab on the interior surface of the cheek to obtain cells that are then evaluated . . . for deoxyribonucleic acid (DNA) analysis." Doe v. Senechal, 431 Mass. 78, 79 n.4, cert. denied, 531 U.S. 825 (2000).

uncharged third party in a criminal proceeding and, accordingly, that the judgment of contempt must be reversed.[4]

Background.  In support of its motion, the Commonwealth submitted affidavits from Boston police criminalist Joseph Ross[5] and Boston police Detective Philip J. Bliss.  We summarize the factual assertions contained in those affidavits, which the Commonwealth intends to establish at trial.  On April 16, 2012, at approximately 10 A.M., the victim, Barbara Coyne, was found in her bedroom, bleeding profusely.  She was transported by ambulance to a hospital, where she died at 10:37 A.M.  The medical examiner determined the cause of death to be homicide by "sharp force object," that is, by stabbing; the victim suffered multiple wounds, some of which appeared to be defensive. Evidence collected from under the victim's fingernails was tested and found to be consistent with a mixture of DNA from two or more individuals, including that of the victim.  At the time the Commonwealth filed its motion, no other potential contributors to the DNA under the victim's fingernails had been

---

[4] We acknowledge the amicus brief submitted by Massachusetts Association of Criminal Defense Lawyers.

[5] Joseph Ross did not conduct any of the testing in this case, and submitted his affidavit based on a review of the Boston police crime laboratory file.

identified by scientific testing.[6]

Police investigation revealed evidence linking Timothy to the crime. A police expert determined that a bloody fingerprint on an item in the victim's living room, and two fingerprints recovered from items in the victim's bedroom, matched Timothy's fingerprints. Videotape retrieved from a nearby store showed an individual who looked like Timothy engaged in a transaction near the lottery machine at approximately 10:03 A.M. According to the State Lottery Commission, winning tickets cashed at that store at that time were consistent in game and book number with lottery tickets that had been found in the victim's living room. In addition, when Timothy was booked in connection with a separate matter, he had scratches on his body. Bliss stated in his affidavit that the scratches were "consistent with contact from another" and "could provide a source of DNA such as the biological matter collected at autopsy from the swab of [the victim's] right hand fingernail."

The investigation also revealed that Timothy and his brother Christopher are twins. A DNA profile is unique to each

---

[6] According to a supplemental affidavit of the Boston police criminalist, which was filed in the Superior Court after a single justice of the Appeals Court had issued an order for a stay pending appeal from the judgment of contempt, and which the motion judge allowed to be made part of the record on appeal over Christopher's objection, further testing later revealed that Timothy "is partially included and unable to be excluded as a possible contributor to the mixture," but that "[a] complete DNA profile consistent with Timothy . . . was not detected."

individual, except for identical twins, who share the same DNA profile.  See Commonwealth v. Dixon, 458 Mass. 446, 448 n.6 (2010); Commonwealth v. Curnin, 409 Mass. 218, 218 n.1 (1991). According to both Bliss and Ross, Christopher and Timothy are believed to be fraternal, not identical, twins.  Christopher testified before the grand jury that he and Timothy are fraternal twins.  The Commonwealth also indicated at the hearing on its motion to compel that Timothy and Christopher do not look alike, and are not of the same height and weight.  Nonetheless, at that hearing, the Commonwealth argued that the only way to determine definitively whether Christopher and Timothy are identical or fraternal twins is by testing Christopher's DNA; if the DNA profiles differ, it can be inferred that they are not identical twins.  The judge allowed the Commonwealth's motion, concluding that the DNA sample was relevant to establishing whether the DNA obtained from under the victim's fingernails matched Christopher's, and that "[w]ithout such evidence, a fact finder at trial may have lingering doubts as to the true biological relationship between the twin brothers here and the origins of any DNA evidence recovered at the crime scene.  Thus, a sample of Christopher['s] DNA will probably provide evidence relevant to the question of Timothy['s] guilt."

As stated, Christopher refused to comply with the order to compel and was found in contempt.  See Lenardis v. Commonwealth,

452 Mass. 1001, 1001 (2008), citing Commonwealth v. Caceres, 63 Mass. App. Ct. 747, 747-748 (2005) ("A nonparty directed to provide evidence . . . can challenge the propriety of the order by refusing to comply with it and appealing from any order of contempt that results").

Discussion.  "A government-compelled buccal swab implicates the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures." Commonwealth v. Draheim, 447 Mass. 113, 117 (2006), citing Commonwealth v. Maxwell, 441 Mass. 773, 777 (2004).  While a buccal swab, which does not involve penetrating the skin, arguably is less intrusive than a blood sample, see Commonwealth v. Maxwell, supra at 777 & n.9, "the obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels -- the 'seizure' of the 'person' necessary to bring him into contact with government agents . . . and the subsequent search for and seizure of the evidence" (citation omitted).  United States v. Dionisio, 410 U.S. 1, 8 (1973).

Where the Commonwealth seeks to obtain a buccal swab from a third party who is not suspected of any crime, it bears the burden of establishing probable cause that a crime has been

committed,[7] and showing "that the sample will probably provide evidence relevant to the question of the defendant's guilt." Commonwealth v. Draheim, supra at 119, citing State v. Register, 308 S.C. 534, 538 (1992). Relevance alone, however, meaning simply that the evidence "render[s] the desired inference more probable than it would be without the evidence," Green v. Richmond, 369 Mass. 47, 59 (1975), is not enough. "Additional factors concerning the seriousness of the crime, the importance of the evidence, and the unavailability of less intrusive means of obtaining it are germane." Commonwealth v. Draheim, supra, citing Matter of Lavigne, 418 Mass. 831, 836 (1994). A judge must weigh these factors against the third party's constitutional right to be free from bodily intrusion. See id. See also State v. Register, supra ("only if this stringent standard is met" may intrusion be sustained).

The Commonwealth maintains that the judge was correct in concluding that it has met its burden of establishing that a sample of Christopher's DNA probably would produce evidence relevant to Timothy's guilt. The Commonwealth notes that each person's DNA profile is unique, except in the case of identical twins, see Commonwealth v. Curnin, 409 Mass. 218, 218 n.1

---

[7] The indictments against Timothy satisfy the first element of the Commonwealth's burden. See Commonwealth v. Draheim, 447 Mass. 113, 119 (2006) ("Commonwealth's burden to show probable cause that a crime has been committed is easily met because the defendant has been indicted").

(1991), and if, as expected, it is established that Christopher is not an identical twin, a line of possible cross-examination at Timothy's trial would be eliminated, and a potential third-party culprit defense would be refuted. Such a result also could support the Commonwealth's case-in-chief; assuming the DNA found at the scene is determined to match Timothy's DNA profile, the Commonwealth's expert would be able to testify that it does so uniquely, as no other person will have the same DNA profile.

We do not agree with the judge's conclusion that the Commonwealth made an adequate showing. Its arguments for the relevance of Christopher's DNA depend on Timothy being identified as a contributor to the DNA found under the victim's fingernails. As noted, when the Commonwealth filed its motion, only the victim's DNA had been so identified, and laboratory testing had not yet identified Timothy as even a potential contributor. Without evidence that Timothy's DNA was found at the crime scene, Christopher's DNA would serve no purpose. Even considering the information set forth in the Commonwealth's supplemental affidavit, see note 6, supra, we are not persuaded that the Commonwealth has met its burden.[8]

---

[8] Christopher argues that it was error to expand the record on appeal to include a supplemental affidavit that was not before the judge at the time of his decision. Because of our disposition of the case, we do not reach this issue.

The supplemental affidavit states, without detail, that Timothy is partially included, and is unable to be excluded, as a contributor to the DNA found under the victim's fingernails. The affidavit does not state conclusively that the profile of this DNA matches Timothy's DNA profile. It also does not indicate either the extent to which the DNA does match Timothy's, or the likelihood that other people are "partially included and unable to be excluded" in the same manner as Timothy. See Commonwealth v. Tassone, 468 Mass. 391, 402 n.2 (2014), quoting Commonwealth v. Barbosa, 457 Mass. 773, 789 (2010), cert. denied, 131 S. Ct. 2441 (2011) ("where '[t]he human genome sequence is almost exactly the same [99.9 per cent] in all people,' a match of the defendant's DNA profile with the DNA found at a crime scene 'says almost nothing about the likelihood that the defendant was present at the crime scene unless the jury learn from an expert' the mathematical probability that another person has this same DNA profile"); Commonwealth v. Mattei, 455 Mass. 840, 855 (2010) (holding that evidence that certain person could not be excluded as potential contributor of DNA should not be admitted without accompanying statistical evidence of likelihood that test could not exclude other individuals in given population, and concluding that introduction of "nonexclusion" DNA evidence without statistical explanation of its meaning was prejudicial error). Indeed, it

would appear that any of Timothy's genetic relatives, including Christopher (even if he is Timothy's fraternal twin), might be so described, as they would share a portion of their DNA with Timothy.[9]  On this record, even certain knowledge that Christopher and Timothy are fraternal twins would neither establish that only Timothy could be the other contributor to the crime scene DNA nor forestall a third-party culprit defense.

More importantly, Christopher's DNA does not bear on Timothy's guilt in the direct and substantial manner as that in our prior cases.  The defendant in Commonwealth v. Draheim, 447 Mass. 113, 116 (2006), for instance, was a woman who allegedly raped two teenage boys; following the alleged rape of each youth, she gave birth to a daughter.  The Commonwealth sought to obtain DNA samples from both daughters in order to determine whether the teenagers were their biological fathers.  In that case, if paternity were established, the daughters' DNA clearly would have provided strong evidence that the defendant had raped the complainants.  In Jansen, petitioner, 444 Mass. 112, 114 (2005), a defendant accused of aggravated rape sought a DNA sample from a third party in order to determine whether the third party's DNA was present on an object involved in the

---

[9] The judge noted that genetic siblings share approximately fifty per cent of each other's DNA.

crime.[10]  If it were, the defendant would have been able to present a third-party culprit defense.  See id. at 119 ("the exculpatory value of this factual showing cannot be minimized or deemed inconsequential").  By contrast, here, the "importance of the evidence," Commonwealth v. Draheim, supra at 119, that is, the relevance of Christopher's DNA to Timothy's guilt, is attenuated.  The absence of DNA that matched Christopher's would not be offered directly to prove Timothy's guilt, but would serve only to bolster other evidence pointing to Timothy.  Cf. United States v. Noble, 433 F. Supp. 2d 129, 130, 137 (D. Me. 2006) (denying motion to compel fingerprinting and DNA sampling of nonsuspect witnesses, which was sought to "bolster[] their credibility as witnesses" in prosecution of acquaintance).

Nor does it appear that the absence of Christopher's DNA would have any significant impact on the Commonwealth's ability to present its case.  The Commonwealth has evidence that fingerprints found at the scene belong to Timothy; an expert could testify that fingerprints are unique even for identical twins.  See Commonwealth v. Joyner, 467 Mass. 176, 182 (2014) (noting expert testimony that fingerprints of twins "will not have the same minutia points").  The Commonwealth also has a

---

[10] The defendant had some factual basis to believe that the third party's DNA was on the object due to the actions of a private investigator.  Jansen, petitioner, 444 Mass. 112, 114-115 (2005).

videotape from a store security camera from which, it maintains, a jury could conclude that, shortly after the stabbing, Timothy cashed in lottery tickets taken from the victim's home.  The Commonwealth stated during argument before us that Christopher likely will be called as a trial witness.  Christopher could testify at trial, as he did before the grand jury, that he and his brother are fraternal twins, as well as to any other relevant facts within his personal knowledge.  In addition, the jury could consider his appearance to decide whether Christopher appears identical to Timothy, and also whether there is any likelihood that Christopher is the person depicted in the security videotape.  By all these means, the Commonwealth is capable of meeting its burden of proof, without intruding on the constitutional rights of a third party who is not suspected of having committed, or of aiding in the commission of, the crime.

We note also that the Commonwealth's asserted need for Christopher's DNA rests in part on speculation that Timothy will present a third-party culprit defense, or at least will use the fact that he has a twin to suggest doubt as to the source of the DNA found under the victim's fingernails.  At this stage, such a possibility is mere speculation.  If Timothy were to offer a third-party culprit defense based on the brothers' twinship, or use that twinship to suggest reasonable doubt, the Commonwealth could seek, through a motion in limine, to prevent the issue of

twinship from being introduced at trial.[11]  If Timothy were to oppose such a motion, the calculus would be different, and at that point, the Commonwealth well might have probable cause to support a motion to compel the taking of a buccal swab from Christopher.  As stated, to date there is no indication that Timothy has any intention of offering such a defense.

In sum, and having weighed the seriousness of the charges against Timothy, as well as the minimally intrusive nature of a buccal swab, we conclude that Christopher's DNA has not been shown to be sufficiently relevant or important to the question of Timothy's guilt or innocence so as to outweigh Christopher's constitutional rights.

<u>Judgment reversed</u>.

---

[11] To be admissible at trial, third-party culprit evidence "must have a rational tendency to prove the issue the defense raises, and the evidence cannot be too remote or speculative." <u>Commonwealth</u> v. <u>Wood</u>, 469 Mass. 266, 275 (2014), quoting <u>Commonwealth</u> v. <u>Silva-Santiago</u>, 453 Mass. 782, 801 (2009).