NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1239

COMMONWEALTH

vs.

LUIS M. ORTIZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Luis M. Ortiz, stands charged with indecent assault and battery on a child under the age of fourteen and rape of a child aggravated by age difference. His brother and codefendant, Luis E. Ortiz, who is the appellant here,[1] stands charged with rape of a child aggravated by age difference. At issue is a Superior Court judge's order allowing the Commonwealth's motion to compel Luis E. to submit to a buccal swab for deoxyribonucleic acid (DNA) analysis, which the Commonwealth seeks to potentially use in its case against the defendant. After Luis E. moved to reconsider the order, the judge held an evidentiary hearing and issued a written decision

_____

[1] Because defendant Luis M. Ortiz and appellant Luis E. Ortiz have similar names, for clarity we refer to Luis M. Ortiz as the defendant and Luis E. Ortiz as Luis E.

denying his motion.  When Luis E. still refused to submit to the buccal swab, the judge found him in contempt.  Luis E. now appeals from the finding of contempt, challenging the judge's underlying order that he provide a DNA sample.[2]  We affirm.

Background.  The charges against the brothers[3] stem from the following alleged events, as summarized by the judge in her written decision on reconsideration.  We stress that at this point these are only allegations.  On July 21, 2019, the brothers and a third man picked up three female juveniles who were on foot after leaving a Department of Children and Families (DCF) residential program in Springfield.  The men drove the girls to an apartment where the defendant forced one of them, J.T., who was twelve years old, to have sex with him.  Luis E. forced a different girl to perform oral sex on him while at the

---

[2] Luis E. initially sought to challenge the underlying order through a petition to a single justice of the Supreme Judicial Court.  The single justice denied the petition on the ground that it did not present extraordinary circumstances for relief under G. L. c. 211, § 3.  On Luis E.'s appeal, the Supreme Judicial Court affirmed, holding that he had "an adequate alternative remedy, namely, an appeal to the Appeals Court from the order of contempt."  Ortiz v. Commonwealth, 492 Mass. 1023, 1023 (2023).  See Lenardis v. Commonwealth, 452 Mass. 1001, 1001 (2008) ("A nonparty directed to provide evidence [such as a buccal swab] pursuant to [Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979)] can challenge the propriety of the order by refusing to comply with it and appealing from any order of contempt that results").

[3] For purposes of this appeal, we will assume, as the Commonwealth appears to, that the defendant and Luis E. are full biological brothers.

same apartment.  When the girls returned to the residential program three days later, they reported what happened to DCF staff.

J.T.'s underwear, which was positive for sperm cells, was analyzed for Y-STR DNA.  As established at the evidentiary hearing, Y-STR testing is "male-specific testing" that "ignores female DNA and just tests DNA on the Y chromosome."  The Y-STR DNA profile obtained from J.T.'s underwear was a mixture of at least two male contributors.  According to the DNA report, "the major DNA profile is at least 742 times more likely if the profile originated from [the defendant] (or a patrilineal relative) than if it originated from a randomly selected individual.  99.8% of the male population can be excluded from the major DNA profile."  But barring a mutation, "all male relatives within the same paternal lineage will have the same Y-STR profile."

After receiving the DNA results, the defendant and Luis E. each filed motions to sever.[4]  The defendant's motion was accompanied by an affidavit from his trial counsel, which stated that the defendant's "best defense in regards to the DNA evidence is that it belongs to his brother Luis E." and that "[j]oinder of these trials would prejudice [the defendant] as it

_____

[4] The trial court dockets reflect that the motions to sever remain pending.

3

would hinder his defense to cast blame on his brother." This prompted the Commonwealth to then move to compel Luis E. to provide a DNA sample. Finding that the Commonwealth met its burden of showing that the sample would produce relevant evidence, the judge ordered Luis E. to submit to a buccal swab.

At the evidentiary hearing on Luis E.'s motion for reconsideration, both parties presented DNA experts. The experts agreed that the expectation would be that Luis E. and the defendant would have the same Y-STR profile. Luis E.'s expert testified that the probability of finding a mutation is ten percent, while the Commonwealth's expert testified that the probability is approximately four percent.

Discussion. "A government-compelled buccal swab implicates the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches and seizures." Commonwealth v. Draheim, 447 Mass. 113, 117 (2006). To compel a third party to submit to a buccal swab, the Commonwealth must establish "probable cause to believe a crime was committed, and that the sample will probably provide evidence relevant to the question of the defendant's guilt." Id. at 119. Here, Luis E. concedes that there is probable cause to believe that a crime was committed against J.T., but argues that the Commonwealth failed to show that his DNA sample will probably lead to evidence relevant to the defendant's guilt. Because this issue

4

is one of constitutional dimension, we consider it de novo.[5]  Cf. Commonwealth v. Roderick, 490 Mass. 669, 673 (2022) ("we accept findings of fact by a judge who saw and heard the witnesses, unless those findings are clearly erroneous, but consider the constitutionality of the search [global positioning system monitoring] de novo").

We agree with the judge that the Commonwealth met its burden of showing that testing of Luis E.'s DNA will probably produce evidence relevant to the question of the defendant's guilt.  If the testing reveals a mutation, that would plainly be relevant evidence because it would exclude Luis E. as a potential contributor to the DNA found in J.T.'s underwear.  While Luis E. concedes this point, he contends that the far more likely result, i.e., a finding of no mutation, would not be relevant evidence because it would leave the likelihood of the defendant's guilt "exactly the same."  We are not persuaded.  Without the testing, there is a four to ten percent probability that Luis E. could be excluded as a potential contributor of the DNA.  If the testing is conducted and reveals no mutation, it would confirm that Luis E. cannot be excluded as a potential contributor and make it equally likely that either brother could have been the contributor.  Because a finding of no mutation

_____

[5] The Commonwealth acknowledged at oral argument that our review is de novo.

5

would thus strengthen the defendant's planned third-party culprit defense, testing of Luis E.'s DNA, whatever the result, will produce evidence that is relevant to the defendant's guilt. See Commonwealth v. Fayerweather, 406 Mass. 78, 83 (1989), quoting Commonwealth v. Copeland, 375 Mass. 438, 443 (1978) (evidence is relevant if it "render[s] the desired inference more probable than it would have been without it"). Cf. Commonwealth v. Kostka, 471 Mass. 656, 662-663 (2015) (Commonwealth failed to show that testing of third party's DNA would lead to relevant evidence where there was no indication that defendant planned to present third-party culprit defense, but "calculus would be different" if defendant later sought to present such a defense).

This does not end the inquiry because we must also consider "the third party's constitutional right to be free from bodily intrusion." Kostka, 471 Mass. at 659. The third party's right must be weighed against "the seriousness of the crime, the importance of the evidence, and the unavailability of less intrusive means of obtaining it." Draheim, 447 Mass. at 119. See Kostka, supra. Here, the defendant is charged with rape of a child, "one of the most serious crimes punishable by law." Commonwealth v. Sherman, 481 Mass. 464, 473 (2019). The evidence sought is also highly important, given that the brothers were present together at the scene of the crime and the

6

defendant intends to pursue a defense that his brother, and not he, was the one who raped J.T. Finally, a buccal swab, which does not involve penetrating the skin, is a "minimally intrusive" means of obtaining the sample. Kostka, supra at 663. Balancing these factors against Luis E.'s right to be free from bodily intrusion, we conclude that the judge correctly ordered Luis E. to submit to a buccal swab for DNA analysis.[6]

That said, we note that the judge's order does not specify whether or how the Commonwealth can use Luis E.'s DNA sample other than for comparison to the DNA evidence in the defendant's case. The briefs do not address this issue, and at oral argument neither party could clarify what would happen to the DNA sample as a practical matter after it is tested. We therefore do not address the issue further, but nothing we have said precludes Luis E. from moving for a limiting order in the

---

[6] Luis E. argues that the low probability of finding a mutation must be considered in the analysis because otherwise "a judge could compel a DNA sampling . . . even if the odds of a mutation were one in a billion." While we agree that the probabilities matter, this is accounted for in the balancing test, which requires a judge to consider "the importance of the evidence." Draheim, 447 Mass. at 119. A four to ten percent probability of finding a mutation is not insignificant and does not tip the balance in Luis E.'s favor.

Superior Court with respect to the use and retention of the DNA sample and the evidence of what the testing revealed.

<u>Order of contempt affirmed</u>.

By the Court (Rubin, Blake & Shin, JJ.[7]),

Assistant Clerk

Entered: April 19, 2024.

---

[7] The panelists are listed in order of seniority.